L. R. GREEN v. TEXAS & PACIFIC RAILWAY COMPANY.

No. 6316.  Decided April 10, 1935.
Rehearing overruled May 15, 1935.
(81 S. W., 2d Series, 669.)

*S. P. Jones* and *Franklin Jones, of Marshall,* and *Keeney & Moseley,* of Texarkana, for plaintiff in error.

In a personal injury suit is was error to admit evidence of amount of accident insurance collected by plaintiff; to submit in a general charge without any evidence to support it the question of plaintiff's purposely injuring himself; to submit the issue of unavoidable accident raising such issue. Joske v. Irwin, 91 Texas, 574, 44 S. W., 1059; Gibson v. American Mut. Life Ins. Co., 37 N. Y., 580; Commonwealth v. Jeffries, 5 Cush. (Mass.), 295; Byland v. E. I. Dupont de Nemours Powder Co., L. R. A. 1915F, 1000; Texas Emp. Ins. Assn. v. Mints, 10 S. W. (2d) 220; 31 C. J., 1181; Wigmore on Evidence (2nd Ed.), p. 254.

*King, Mahaffey, Wheeler & Bryson,* of Texarkana, for defendant in error.

Mr. Presiding Judge RYAN delivered the opinion of the Commission of Appeals, Section B.

Plaintiff in error brought this suit in the District Court of Bowie County, to recover damages for personal injuries alleged to have been sustained by him on the night of July 24, 1930, in Big Spring, Howard County, for the loss of a part of an arm, the result of stumbling over a piece of railroad iron or rail owned by the Texas and Pacific Railway Company and negligently permitted to extend into the street, which caused him to fall into and under a passing freight train.

The defendant's answer consisted of a general denial and plea of contributory negligence on plaintiff's part.

The case was submitted to the jury in a general charge and they returned a verdict for the defendant railway company, which was affirmed by the divided Court of Civil Appeals. 50 S. W. (2d) 352. Writ of error was granted "because of the dissent."

Green testified that somewhere in the neighborhood of ten o'clock at night he decided to leave his room on Nolan Street and get a sandwich and some coffee before retiring. He walked down Nolan Street to the railroad track where a freight train was standing, its cars being re-iced. Nolan Street, at that time, was not open across the railroad track and he walked easterly to Goliad Street, which was the only street open at that end of town, to cross the track. The train was then moving out and he stopped on the west side of Goliad Street about seven or eight feet from the moving train. At that place there were certain markers "to designate the street, some posts which were used by the railroad, or some one has placed there." These markers or posts were between three and four feet high, pointed, with a place about two inches square on the top that was not pointed. While waiting for the train to pass, he put his right foot on one of said posts, and as the train passed, in changing his position, he caught one of his feet under a piece of iron which was covered with weeds and extended out into the highway from the railroad right of way, and stumbling fell backwards toward the train and 'the next thing he knew," he "was under the train."

It was alleged in the petition that the Texas & Pacific Railway Company owned the piece of railroad iron and was guilty of negligence in permitting it to be on its right of way and to extend, as it did, onto the street.

The court charged the jury: "If you believe from a preponderance of the evidence that the plaintiff purposely, or negli-

gently, fell against said train, or that he was negligent in not discovering, if he did not discover, said railroad iron and avoid striking his feet against same, if they did strike same, or that he was negligent in his walk, or in moving or shifting his feet in such a way as to cause them or either of them to strike or come in contact with said railroad iron, if they did, thereby causing or contributing to cause plaintiff's said injuries, then you will find for the defendant."

Plaintiff objected to the court submitting to the jury the question of whether the plaintiff purposely or intentionally brought about the injury, on the ground that it was not raised by the evidence.

It was testified by plaintiff that he is six feet four tall, thirty-four years old and weighs somewhere around one hundred and eighty pounds, that he had carried and paid the premiums on life and accident insurance in the Trainmen since he was eighteen years old, in the sum of $5000.00, also in the Switchmen in the sum of $2400.00 for a little over a year, and collected the sum of $7400.00 on said insurance on account of this injury.

On cross-examination, plaintiff was asked the direct question, if he did not purposely put his hand under the car—this he denied. His personal history was thoroughly gone into and disclosed that he first worked for the Missouri Pacific Railroad and was injured at Gifford, Arkansas, in August, 1919; he lost about seventeen months labor and the company settled with him for $3000.00. He went back to work for the Missouri Pacific and then took charge and managed, for a short time, the International Tie Company in Texarkana, then worked a little over one month for the International Creosote Company, after which he worked for the Santa Fe Railroad at Arkansas City, Kansas, and then in August, 1920, for the I. & G. N. Railroad at Houston. He worked for that company the balance of the year, sustained a slight injury to an ankle and received $51.00 for it. He remained in Houston until 1921, after which he worked for a furniture company, in Oklahoma.

The testimony is confusing as to when, about this time, he worked for the furniture company, but in 1922, he was at Evanston, Wyoming, with the Union Pacific, where he worked through the fruit season from August, 1922, until October, 1922, then worked for the Santa Fe at Wellington and Arkansas City, Kansas, from October 10th until December 9, 1922. He left there and went to Muskogee, on the K. O. & G., where he was jerked off the end of a car and injured in the back and shoul-

der; he was allowed his salary, $128.50, for that. He worked at El Dorado for only a short time because business fell off, and then went to Midland Valley at Tulsa, and then to work in the Texas Company's yard as Yard Master. The Texas Company has a railroad yard there and use their own power. He was at Salida, Colorado, working for the D. & R. G., and then went to work for the Missouri Pacific at Pueblo, on the 29th of August, 1923, until December 1, 1923, then went back to Memphis to work for the Y. & M. V. on February 5, 1923. (In answer to a question by counsel for defendant he stated that he had never been "fired."). He worked there that Spring, went back to Pueblo, left Pueblo in October of that year, went back to Little Rock. He was then asked the question, "Where did you go from Little Rock in 1927?", which he answered, "Well, I don't know, prior to that, as I told you before I came to Big Spring. I have worked for the Wichita Falls Southern there. Question: Let's see how long you worked at each place. Answer: I have not the dates."

He testified further, he could not say approximately how long, he worked for the Wichita Falls Southern. He worked several months for the St. Louis Terminal Association, then for about three months he worked for the Santa Fe at Amarillo, also for the Frisco at Enid, Oklahoma, for about thirty days during the wheat season, also for about a year at Sapulpa. He went to McCammie, stayed just a few days "and worked for the Oriental people and decided that my living conditions were unbearable, then I went to Big Spring and went to work for the T. & P. * * * I guess this must have been in 1928 or 1929." He testified further that it was about four years since he worked there, also that he went out of the service in April, 1930 and "did quite a bit of travelling looking for a job" between that time until he was hurt, on July 24th, that is to say between April and when he was hurt.

He accounts for his presence in Big Spring when injured, thus:—He had been discharged in the latter part of April from the service of the Texas and Pacific Railway Company at Monahan and the case was being taken up by the Organization of Trainmen; the matter was to come up "in Dallas in front of Mr. Tilson" and he was staying over until the hearing was to come up.

The defendant company on its theory that the injuries were purposely and designedly caused and self-inflicted as a result of a conspiracy between him and G. C. Dark and W. R. Perry, the latter two to be witnesses, for the double purpose of

collecting insurance and procuring damages from the railroad, insists that there was ample circumstantial evidence to warrant a jury in so finding and there was no error in the court's submitting the question to the jury.

Green testified that he had known Perry since childhood and Dark not so well; Perry was then working for the Texas and Pacific Railroad as was Dark. They were both conductors. Earlier in the evening about an hour and a half before the injury, while he, Green, was at the restaurant in the T. &. P. station, Dark was there and asked him where Perry lived "and I got in the car with him and drove him over there," after which Perry got in Dark's car and they left Green at his rooming place at about nine o'clock.

Perry testified that Green brought Dark "to my house to show him where I lived. Dark wanted to see me about another matter; about an accident that Dark had had a day or two before that. I was to represent him before some hearing." He got in the car with Dark to discuss the investigation coming up the next day; they took Green to his room and left him there, and then drove around on the highway from town to discuss such investigation, and were gone about an hour and a half. Dark lived at the same place Green did. After Dark and he had discussed that matter, they came back to Goliad Street on Perry's way home. They had to cross the railroad track, and approached Goliad Street from the north. The crossing over the track was closed by a fruit train, and Dark stopped the car in which they were riding, about fifteen feet from the train.

Another car driven by Jack Campbell, whom they then did not know, drove up on their right hand side. Mr. Green also came up, walking, toward the railroad track, and all stopped until the train passed.

Perry testified further, that when Green came up and waited for the train to start, he put one foot upon a short post on the track "and apparently made himself comfortable," and remained in that position "thirty seconds or something like that, when he went to put his foot down he fell backwards into the train." He fell on a steel rail lying parallel with the track a few feet from the track, partly in the street "and part of it was back, not over the street." The rail was lying seven or eight feet, perhaps ten, from the track. Perry and Dark with Jack Campbell, who was in the other car which had also stopped while the train was passing, and who until then was unknown to them, took Green to the hospital.

Perry testified also, the rail was concealed in the weeds and he did not see it until after he got out of the car; that Green stumbled where the rail was lying; that he did not know the rail was there until after the accident.

Dark did not testify; it was shown that his then whereabouts were unknown, he having left the company's employ.

Campbell, who had never seen Green to know him, before he was injured, testified, that in July, 1930, he worked for the Texas Electric Service Plant, at Big Spring, went off duty at ten o'clock, got in his car and started home to 1305 South Nolan Street; he got to the railroad crossing on Goliad Street, which was then blocked with a fruit train moving east. There was another car there, he did not at that time know whose it was; while there he saw Green walk up from the west and turn south into Goliad Street in the regular path where people walk. Witness saw Green stop and then move and fall; he went with Perry, Dark and Green to the hospital.

He saw a railroad iron about eight feet or better from the track, about twelve or fourteen feet long, lying in an easterly and westerly direction, part of it sticking about five feet into Goliad Street from the west, past the street markers.

The witness testified also that his duties carried him along the railroad track in the neighborhood of Goliad Street, every day or two, that he had seen this rail for something like two months before, in the same position it was that night. The rail was afterwards moved and at the place where it had lain, the weeds and grass were yellow like grass will turn when something lies over it.

The rail was lying right under the post where Green was standing before he fell.

It was shown that the railroad tracks run east and west and divide the town into two parts, north and south, that Perry lived on South Nolan Street and Green in the 100 block north of the track.

The above constitutes all the material testimony elicited, to show or tend to show that Green purposely caused the injury to himself, and the question therefore is, was it sufficient to take that issue to the jury?

There was no indirect evidence that Green purposely harmed himself and the mere circumstance that he carried insurance (one policy for many years previously and the other for more than a year), and a friend witnessed the accident, must raise the issue, if it is raised.

1 Direct evidence on such an issue is not always obtainable

and circumstantial evidence is proper; great latitude is allowed in the reception of indirect or circumstantial evidence (17 Tex. Jur., 354), but evidence of a circumstance which would not be of sufficient probative force, *together with the other circumstances proven,* to more than possibly raise a suspicion of the existence of the fact sought to be proved, must not be admitted. Houston & T. C. Ry. Co. v. Swancey, 128 S. W., 677, w. e. refused. To establish a fact by circumstantial evidence, the circumstances relied on must have probative force sufficient to constitute the basis of a legal inference. It should not be of such character as to permit of purely speculative conclusions. Baker v. Loftin, 222 S. W., 195 (Com. App.); Mo. Pac. Ry. Co. v. Porter, 73 Texas, 304, 11 S. W., 324, 17 Tex. Jur., 907. But the presumption, in the absence of overcoming evidence, is that no one will voluntarily do an act that places his own life in danger. (Perkins v. Nail, 37 S. W. (2d) 211, w. e. refused; Vilbig v. Lucas, 23 S. W. (2d) 516; Hutcherson v. Amarillo St. Ry. Co., 213 S. W., 931 (Com. App.) and that he took ordinary precautions for his own safety (Jones v. Louisiana Western Ry. Co., 243 S. W., 979 (Com. App.); International L. Ins. Co. v. Carroll, 17 Fed. (2d) 42, 50 A. L. R., 362; 17 Tex. Jur., 272). In insurance cases the presumption is always against self-destruction or self-injury. 24 Tex. Jur., 1263.

The decision on deductions from evidence can not be made on remote inferences. Jones on Evidence (3d Ed.) p. 181, par. 137.

Seasonable objection was made and overruled to the testimony that Green had collected insurance and the amount thereof, and after the evidence had been concluded, special charges were asked and refused, to withdraw all testimony relating to the plaintiff having collected insurance and to settlements made for other injuries, and specifically withdrawing the same from consideration of the jury, but the court did give special charge No. 3, *without prejudice to plaintiff's right to claim error on account of having refused* to give said other special charges numbered 1 and 2. Said special charge No. 3 is as follows:

"Gentlemen of the jury:

"You are instructed that the testimony relating to payment of insurance to the plaintiff can not be considered by you in connection with the damages, if any, the plaintiff may have sustained by reason of the injury, but same may be considered for the purpose of enabling you to determine whether the plaintiff purposely threw himself against the train for the

purpose of procuring the infliction of injuries upon himself, and for no other purpose."

"Special Issue No. 3. Requested by plaintiff, after his special charge 1 and 2 were refused:"

2 We are of the opinion that special charges 1 and 2, to withdraw all testimony that Green had collected insurance for this accident and had made settlements for other injuries, should have been given and such testimony withdrawn, because of the absence of corroborative testimony of probative force, to sustain the contention that Green self-inflicted the injuries. The fact that plaintiff was insured against injury does not affect his right to recover, if otherwise he is entitled to do so. 13 Tex. Jur., 173.

It is true that after the court had so adversely determined, plaintiff asked and the court gave said special charge No. 3 limiting consideration to the question of whether the plaintiff purposely threw himself against the train for the purpose of procuring the infliction of injuries upon himself, and for no other purpose, and particularly not in connection with the damages, if any, the plaintiff may have sustained by reason of the injury, but this was, as shown by the bill of exceptions, without prejudice to the plaintiff's right to claim error "on account of the court having refused to give special charges 1 and 2 or either of them."

3 Error is assigned to the court's having instructed the jury to find for the defendant if they believed the injuries "were received as the result of unavoidable accident, that is to say, without negligence on the part of either party."

An accident which happens without fault on the part of either party, neither party being negligent, is classed in law as unavoidable. Dallas Ry. & Terminal Co. v. Darden, 38 S. W. (2d) 777 (Com. App.); Texas & P. Ry. Co. v. Edwards, 36 S. W. (2d) 477 (Com. App.).

It was said in Dallas Ry. & Terminal Co. v. Darden, supra, "it is impossible to announce a fixed rule applicable to all cases by which it can be decided just when the issue of unavoidable accident is presented. In order to determine whether such issue is involved, the facts of each particular case must be examined with the view of ascertaining whether there is presented a theory under which the accident could have happened, notwithstanding all the parties to the transaction exercised the degree of care required by law."

Either party is entitled to an affirmative presentation to

the jury of any fact or facts properly raised, as a defense, which if true would establish such defense. Montrief & Montrief v. Bragg, 2. S. W. (2d) 276 (Com. App.).

A defendant is not required to specially plead that the injury was the result of an unavoidable accident to entitle him to have such issue submitted to the jury, if the issue is raised by the evidence. Galveston H. & S. A. Ry. Co. v. Washington, 94 Texas, 517, 63 S. W., 534; Greer v. Thaman, 55 S. W. (2d) 519 (Com. App.); Rosenthal Dry Goods Co. v. Hillebrandt, 7 S. W. (2d) 521 (Com. App.).

The evidence is meager and justifies the inference that Green's stumbling was not caused by reason of the presence in Goliad Street of the rail, but because his foot was tired; he testified "I stopped and put my foot on one of them (posts or markers). I changed my position, put my foot down and when I did, I guess on account of my foot being tired when I changed my position, I stumbled and the next thing I knew I was under the train."

"What caused you to stumble? A. The only thing I could have stumbled over was the rail that was sticking into the highway proper, which was covered with weeds."

Only by argument did he assign as a reason for falling, that he stumbled over a rail, and he so guessed because his foot was tired when he changed his position.

The evidence of the company's ownership or control of the rail and its having been placed there by the company, or through the negligence of its employees or agents, is likewise very meager, if indeed any such inference can be drawn therefrom.

No evidence was adduced that the rail was owned by or was part of the company's equipment; the only evidence on the subject was that of Campbell, who testified that the rail had lain there about two months, to his knowledge, and the other testimony that when the rail was removed, after the accident, the grass covered by it was yellow like grass will turn when something lies over it.

To hold the company liable, its negligence must be shown. In Missouri K. & T. Ry. Co. v. Jones, 103 Texas, 187, 125 S. W., 309, a switchman riding on the footboard of a slowly moving engine, got off for the purpose of throwing a switch, and stepping on an iron bolt lying on the track, which rolled under his foot, was thrown thereby over the track and injured. Judge Williams, speaking for the court, in reversing and rendering a judgment against the company, said that

to constitute its negligence the bolt must have been put on the track by some employee, or its presence there must have been known to some of them before the accident, or must have continued long enough to justify the inference that the failure to know it was due to a want of the proper care. One of the witnesses testified that the bolt looked like it had been covered up for quite a while so no one could have seen it, but the court said "What this indicates, or what appearance the bolt could have had that would tend to show how it came to be on the track, we are unable to see."

So here, while Campbell's testimony might raise the inference that the company should have known of the rail, the testimony is that Green was off the company's premises when he stumbled and there was no evidence of who owned or was responsible for the rail, and of course unless the company placed the rail as it was, off its premises, it is not liable.

In Ft. Worth Belt Ry. Co. v. Jones, 106 Texas, 345, 166 S. W., 1130, the railway company sued for injury by negligence in permitting an iron pipe to be upon the track on which its employees were operating cars, impleaded and sought judgment against a packing company doing construction work adjoining such track as being the one whose servants had negligently placed the pipe thereon. On certified question, Chief Justice Brown said that the fact that the packing company's servants were at work near the track can not furnish a basis for a presumption that they placed the pipe on the track. It did not rest upon Armour & Co. (packing company) to prove that their servants did not place the pipe there, but the burden was upon the railroad company. A presumption of fact can not rest upon a fact presumed; the fact relied upon to support the presumption must be proved. One presumption can not be based upon another presumption.

Here, it must be presumed, before plaintiff can recover, that the rail was placed in its position outside the company's premises, by the company's employees, before there can be the inference that the rail remaining in such position for about two months (according to Campbell's testimony) constituted actionable negligence.

This would be basing one presumption on another. So far as the company is concerned, therefore, the injury, happening as it did, according to testimony, would justify a jury finding that it was an accident, and the charge on unavoidable accident was not error.

4 We have reached the conclusion that the court erred in its

charge on self-inflicted injuries, and the judgments of the District Court and the Court of Civil Appeals, are therefore reversed, and the cause remanded.

Opinion adopted by the Supreme Court April 10, 1935.

Rehearing overruled May 15, 1935.