**FEDERAL UNDERWRITERS EXCHANGE v. HIGHTOWER.**

No. 14359.

Court of Civil Appeals of Texas. Fort Worth.

April 3, 1942.

Rehearing Denied May 1, 1942.

See, also, 142 S.W.2d 963.

Lightfoot, Robertson & Gano, of Fort Worth, for appellant.

Clark, Craik, Burns & Weddell and J. Harold Craik, all of Fort Worth, for appellee.

McDONALD, Chief Justice.

This is a workmen's compensation case. Judgment was rendered in favor of plaintiff upon a jury verdict. Defendant appeals, asserting that either its motion for instructed verdict or its motion for judgment non obstante veredicto should have been granted, on the ground that there is no evidence to show that plaintiff's disability resulted from the injury alleged.

Plaintiff was employed at a meat packing plant. Among his duties was that of skinning dead animals brought into the plant. There was evidence from which the jury could reasonably have believed that a few days prior to August 15, 1938, plaintiff skinned a cow which had been brought into the plant after it had died; that while skinning the cow plaintiff cut his finger; that on August 15, 1938, he became violently ill with the disease known as undulant fever; that his condition became chronic, and that there is no known cure for the disease in cases where it becomes chronic; that plaintiff will not be able to work again. It appears undisputed from the evidence that undulant fever may be contracted by humans from cattle suffering from what is known as Bang's disease, either by drinking raw milk, or by physical contact with the diseased animals, and that, although the germs can find their way through the skin where there is no break in the skin, a person is more likely to contract the disease through an open wound than in any other manner. It appears that abortion is the principal symptom of Bang's disease in a cow. It appears that humans may also contract undulant fever from hogs or goats suffering from diseases similar to Bang's disease, although there is a difference in the germs in the three kinds of animals.

Plaintiff testified that he had not had any recent contact with goats or hogs, and that he drank only pasteurized milk.

Plaintiff testified that he had cut his finger on another occasion while working at the plant, some three weeks prior to August 15, 1938.

It appears that plaintiff made no complaint about cutting his finger, other than going to the office and having first aid rendered, and that it soon healed. He was unable to work for several weeks beginning August 15, 1938, but returned to his work in October, working four or five weeks, when he was laid off. Shortly afterwards he filed claim with the Industrial Accident Board for compensation, claiming that the undulant fever resulted from the injury to his finger and the infection then received while skinning the dead cow.

This is the second appeal of this case. Upon the former appeal this court held that there was sufficient evidence to justify submission of the case to the jury, but reversed and remanded the case upon other grounds. Federal Underwriters Exchange v. Hightower, 142 S.W.2d 963. After lengthy consideration and careful review of the evidence brought before us upon this appeal, we have come to the conclusion that there is no evidence of probative force showing that plaintiff contracted undulant fever through the cut in his finger while skinning the dead cow in question. The fatal defect in plaintiff's case, as we see it, is the lack of any evidence of probative force showing that the cow in question had Bang's disease.

Plaintiff was the only witness who saw the cow. He said that the cow was dead when they brought her in. That "she was swollen, and just a big old dead cow and showed that she had had a calf lately, right lately". His counsel asked him: "Well, could you tell from the looks of her whether or not she had an aborted calf?" Plaintiff answered: "Well, she just—the female organs was just torn and bloody and swollen awful." Her udder was full of milk. Plaintiff cut his finger while skinning the cow; it bled freely; he continued until he finished skinning the cow; and then went to the office at the plant and received minor first aid treatment. A few days later the undulant fever developed.

Plaintiff's counsel questioned him, and he answered, as follows:

"Q. This particular cow you were skinning, I believe you testified she was swollen. Could you tell from the condition of her female organs and so forth as you skinned her whether or not she had aborted or miscarried? A. Well, what experience I have had, I would say she had.

"Q. You would say she had. A. Lost a calf; had a calf, in other words.

"Q. Of course, you didn't know whether she was afflicted with fever. A. No, sir, I didn't."

Plaintiff did not know how long the cow had been dead, saying that he was no judge of that matter. Upon cross-examination he was asked:

"Q. When you testified from her condition you could tell she had had a calf, you don't know whether she had had a miscarriage or regular birth or whether it had been a premature birth? A. No, but she was drawed and red and swollen and a terrible looking sight.

"Q. That is somewhat the usual condition, isn't it, when a cow gives birth to a calf? A. Well, I wouldn't say 'yes' or 'no'."

Plaintiff testified that he had worked on a farm a year; that he knew something about the condition of cows when they gave birth to calves; that their udders are usually filled with milk at the time; but that he never did examine any of them.

Plaintiff testified that he had never seen a cow give premature birth to a calf.

Plaintiff skinned two other cows that same day. He cut his finger three or four weeks before, and had cut it on other occasions during his period of employment at the same plant. Plaintiff was of opinion that he cut his finger the last time on Thursday or Friday, before August 15, 1938, which fell on Monday. The testimony of the physicians was to the effect that undulant fever would show up in the patient as soon as four or five days after exposure, or as long as six months after exposure.

It is apparent that the witness could not with accuracy tell whether or not the cow had given premature birth to the calf, just from her appearance afterwards, unless he had some knowledge or experience upon which to base his estimate. When

the testimony of the plaintiff is examined as a whole, it is evident that he did not know whether the cow had given premature birth to a calf. His answers to the leading questions of his counsel were weak. He said that he had never seen a cow give premature birth to a calf. To the direct question put to him by counsel for defendant, "You don't know whether she had had a miscarriage or regular birth or whether it had been a premature birth?" he answered, "No, but she was drawed and red and swollen and a terrible looking sight."

It appears from the testimony of Dr. Galvan, the only veterinarian testifying in the case, and, as for that matter, we think it would properly be considered a matter of common knowledge, that abortions may result from causes other than Bang's disease.

To complete the chain of causation, it was necessary for the jury to presume from the appearance of the cow that she had had an abortion, that if she had an abortion it was caused by Bang's disease, and that if she had Bang's disease the plaintiff contracted undulant fever by reason of germs entering the wound on his finger while he was skinning this particular cow. All this was necessary to make out a case for workmen's compensation. This was not only piling a presumption upon a presumption, but it was piling presumption upon presumption, and then another presumption upon that one. If it had been proven by positive testimony that the cow had had an abortion, then it would still have been necessary to presume that the abortion had been caused by Bang's disease, and then presume that the germs from it had entered the wound on plaintiff's finger and caused the undulant fever. As we understand the law of circumstantial evidence, it would have been necessary to establish by positive evidence, and not by mere circumstantial evidence, that the cow had Bang's disease, in order to lay the proper predicate for an inference that the disease was communicated to plaintiff from that particular cow.

To us the case of Standard Acc. Ins. Co. v. Ritchie, Tex.Civ.App., 89 S.W.2d 498, writ dismissed, appears directly in point. The Court of Civil Appeals reversed a judgment in favor of plaintiff upon the sole ground that the verdict of the jury was wholly without support in the evidence. The plaintiff claimed that he had contracted a gonorrheal infection from the use of a toilet upon the employer's premises. The Court of Civil Appeals held that, in the absence of any positive proof that the toilet was infected, it was necessary to pile presumption upon presumption to arrive at a finding that plaintiff had contracted the infection from that source. This court, in Garrett v. Sinclair Refining Co., Tex.Civ.App., 94 S.W.2d 1218, writ dismissed, held that an instructed verdict would have been proper in a case somewhat like the Ritchie case.

In 17 Tex.Jur., 247, it is said: "Inferences can never be made to subserve the primary function of evidence, and no inference of fact should be drawn from an uncertain premise. The fact or facts relied on to support a presumption or inference must be proved by direct evidence the same as if they were in issue. A presumption of fact cannot rest upon a fact presumed, or, in other words, one presumption cannot be based upon another presumption, nor an inference of fact upon other inferences."

In the same volume of Texas Jurisprudence, at pages 907 to 909, may be found a discussion, and citations of many decisions, concerning the sufficiency of circumstantial evidence to establish a given fact. At page 909 it is said: "The circumstances relied on must be proved by direct evidence; they may not, it seems, exist merely by inference or presumption. No safe conclusion, so it is said, can be deduced from circumstantial evidence if it be left reasonable to suppose that the circumstances themselves are not proven."

The evidence in the case before us is not sufficient to meet the test laid down in such cases as Garrett v. Hunt, Tex.Com. App., 283 S.W. 489, 491: "It is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the fact sought to be established."

In Green v. Texas & Pacific R. Co., 125 Tex. 168, 81 S.W.2d 669, 673, in an opinion of the Commission of Appeals adopted by the Supreme Court, it is said: "To establish a fact by circumstantial evidence, the circumstances relied on must have probative force sufficient to constitute the basis of a legal inference. It should not be of such character as to permit of purely speculative conclusions."

See, also, Baker v. Loftin, Tex.Com.App., 222 S.W. 195; Missouri Pac. R. Co. v. Porter, 73 Tex. 304, 11 S.W. 324; Kahn v. Grothaus, Tex.Civ.App., 104 S.W.2d 932, writ dismissed; Texas Pac. Fidelity & Surety Co. v. Hall, Tex.Civ.App., 101 S.W.2d 1050, writ dismissed.

In view of our disposition of the appeal, it becomes unnecessary to consider other points relied upon by appellant for reversal.

The evidence in the case appears to have been fully developed. The judgment of the trial court is reversed, and judgment is here rendered in favor of defendant, the appellant in this court.