Leo J. HAVERKAMP, Appellant,

v.

WILLINGHAM DRILLING CO., Appellee.

No. 14989.

Court of Civil Appeals of Texas.

Dallas.

July 15, 1955.

See also, Tex.Civ.App., 281 S.W.2d 362.

Freels, Elliott & Nall, Sherman, for appellant.

Van Zandt & Sanford, Sherman, for appellee.

DIXON, Chief Justice.

This is an appeal from an order overruling a plea of privilege.

In its petition filed in Grayson County, appellee, a corporation, alleged that appellant, a resident of Cooke County, had failed and refused to return a borrowed drilling rig substructure, and further that appellant or his agents furtively and under cover of darkness went upon appellee's premises in Grayson County and willfully, maliciously, unlawfully, and without appellee's consent took, carried away and converted to his own use 1,000 feet of 3½ inch pipe, 240 feet of 4½ inch pipe, and a welded steel storage tank mounted upon steel skids.

Appellee's controverting affidavit alleged that venue properly lay in Grayson County under art. 1995, subdivision 9, V.A.C.S., for the reason that appellant had committed a trespass in said County. To sustain this contention it was necessary for appellee to prove, first, that a trespass had been committed by appellant, and second, that appellant's act of trespass had been committed in Grayson County. Williams v. Rearick, Tex.Civ.App., 218 S.W.2d 225; 43-B Tex.Jur. 419–423; 374–376.

Appellant's one point on appeal is that there was insufficient evidence to sustain the trial court's judgment. We agree with appellant. In our opinion there is insufficient evidence to sustain the trial court's implied finding as to the second of the above named requirements.

Prior to the hearing appellee filed its request for admissions under Rule 169, T.R.C.P., and among other matters requested appellant to admit that he or his authorized employees had removed the welded steel storage tank from appellee's premises. Appellant's written answer was a denial under oath.

At the hearing on the plea of privilege appellee offered no evidence whatsoever in support of its allegation that appellant failed to return a borrowed drilling rig substructure. In fact the only evidence material to this appeal was with reference to the allegation that appellant had committed a trespass in Grayson County by going upon appellee's premises and removing the welded steel storage tank.

Only two witnesses testified: Arthur Willingham, president of appellee corporation, and Irvin Suckle.

We quote from the testimony of Arthur Willingham:

"I met Leo on East Houston, across the street from the Texas Theater, and I asked him about all of it. He said, 'Well, I got your tanks but I didn't get your pipe.' He said, 'I figured that was all I would ever get.' And he said, 'You know who got your pipe, don't you?' And I said, 'Well, I think I do.' * * *

"Q. Did you ever see this defendant, Leo Haverkamp, go up on that property and remove this tank? A. No, sir.

"Q. Did you ever see any agent or employee of his, acting under his direction, take that? A. No, sir.

"Q. Leo Haverkamp is not present here in court here today? You know that? A. I haven't seen him. * * *

"Q. Do you know for a fact that someone else didn't take it off from that lease and then Leo Haverkamp got it? A. I don't know anything only what he told me.

"Q. You don't know where he got it, do you? A. No, sir.

"Q. You don't know when it was gotten? A. No, not exactly. I know approximately when.

"Q. And if Leo Haverkamp ever got it, you don't know from what site or location he got it, do you? A. No, sir.

"Q. You don't know that he did not get it by virtue of a sale from someone, do you? A. No.

"Q. Isn't it true that you do not know whether or not Leo Haverkamp went on that lease and willfully and maliciously and unlawfully took that tank away? A. Did you say 'Know'?

"Q. Isn't it true that you do not know whether he did that? A. That's right. * * *

"Q. Arthur, when Senator Van Zandt asked you how you knew that Haverkamp had the tank, your answer to him was that he told you that he got it. In response to my questions, I asked you if you knew whether or not he, Leo Haverkamp, unlawfully, willfully or maliciously went upon that lease and without your knowledge and took that tank off, and I believe your answer was that you didn't know. Now in response to Senator Van Zandt's question, it is your testimony that Leo Haverkamp told you that he did go on that lease and take it? A. He did.

"Q. Why did you tell me that all he told you was that he got it and that you did not know where he got it or from whom he got it or under what circumstances he got it? A. Well, to me it all means the same thing.

"Q. Isn't it true that Haverkamp, if he said anything at all to you, said no more than he had the tank? A. No.

"Q. Is it now your testimony that Haverkamp told you that he went on that lease? A. He told me that he got the tanks and he figured that was all he would ever get.

"Q. That he got the tanks? He didn't say from whom, did he? A. No.

"Q. He didn't tell you where he got it? A. No.

"Q. He didn't tell you when he got it? A. No, sir.

"Q. He didn't tell you under what circumstances he got it? A. He did not.

"Q. He didn't tell you that he went on the Peyton-Bogy lease and got it? A. No.

"Q. And you don't know where he got it, do you? A. No. I know where it was.

"Q. All right. The last time you saw it you know where it was. And what happened to it after that, from the time it came into Mr. Haverkamp's possession, if it did, you don't know where it was or what was happening to it? A. No, sir."

We quote also from the testimony of Irvin Suckle:

" * * * I asked him about the tank, that Arthur lost his tank and wondered if he had gotten it, and he said he had. * * *

"Q. What, if anything, did the defendant say? A. He said that he had the tank, he had gotten the tank...

"Q. That he had gotten the tank? A. That's right.

"Q. Did he say anything further about from whom he had gotten it? A. No. * * *

"Q. Did the defendant give you any circumstances under which he had taken it? A. No. * * * But he did admit that he had taken a tank belonging to Willingham Drilling Company or Willingham himself. * * *

"Q. What was it Mr. Haverkamp told you? A. I asked him a question. He didn't outright tell me.

"Q. What was your question? A. I asked him if he knew where Willingham's tank was and he said that he had it, that he got it.

"Q. Was there anything else he told you? A. No; that's all.

"Q. Did he tell you what tank it was? A. No, sir.

"Q. He didn't tell you it was the tank with the skids on it? A. No.

"Q. Didn't tell you how he had come into possession of it? A. No.

"Q. He didn't tell you when he had come into possession of it and you don't know? A. No. Positively don't know, no; just what he told me.

"Q. He just said that he had a steel tank, is that right? A. That's right.

"Q. Didn't tell you that it was Arthur's steel tank? A. He said that he had gotten Arthur's tank, yes, sir.

"Q. That isn't what you told me the first time, Mr. Suckle. Did he tell you that he had gotten Arthur's tank or that he had a steel tank? A. He said he had gotten Arthur's tank.

"Q. Did you know which tank, or did he say which tank? A. No, he didn't say which tank or what shape tank or how big it was. And that was the end of that conversation because we talked about other business other than that.

"Q. All right, sir. And if in fact he did have a tank, he didn't tell you under what circumstances? A. No.

"Q. And you don't know? A. I don't know. No, sir.

"Q. How he acquired it? A. No.

"Q. When? A. No.

"Q. Where? A. No.

"Q. From whom? A. No.

"Q. Or exactly which tank it was? A. No."

In our opinion the quoted testimony, when considered in a light most favorable to appellee, is not sufficient to support

a finding that appellant, or his agents, were the persons who committed the trespass in Grayson County. Even if we were to say that it shows that appellant obtained possession of the storage tank through conversion, the evidence fails to indicate when, how, from whom, or under what circumstances, and especially *where* appellant converted or obtained possession of the tank. The evidence is insufficient to justify an inference that it was appellant or his agents who went onto appellee's premises in Grayson County and carried away the tank. Green v. Texas & P. R. Co., 125 Tex. 168, 81 S.W.2d 669, at page 673.

Appellee cites the case of Galloway v. Nichols, Tex.Civ.App., 269 S.W.2d 850, at page 852, where, quoting from 17 Tex.Jur. 306, the court says: "'* * * Where a party does not in any way seek to contradict the testimony of his adversary on a particular point, the presumption is that he has no testimony to controvert it; and when the proof tends to establish a fact, and at the same time discloses that it is within the power and the interest of the opposite party to disprove it, the silence of the opposing party not only strengthens the probative force of the affirmative proof but of itself is clothed with a certain probative force.'"

We do not disagree with the holding in the cited case, but we do not believe it is applicable to the facts in the instant case for two reasons: (1) In the case now before us there is an insufficiency in the "probative force of affirmative proof" to raise the necessary presumption; and (2) appellant has not remained silent—he has denied in writing and under oath that either he or his employees removed the tank from the premises in question.

Appellant's point on appeal is sustained. The judgment of the trial court is reversed and the matter of appellant's plea of privilege is remanded to the trial court for another hearing.

Reversed and remanded.

Freels, Elliott & Nall, Sherman, for appellant.

Van Zandt & Sanford, Sherman, for appellee.