CATHOLIC CHARITIES OF THE DIOCESE OF GALVESTON, INCORPORATED, v. JUDITH ANN HARPER ET VIR.

No. A-7775. Decided July 6, 1960.
(377 S.W. 2d Series 111)

22

*Holman, Caccomanno & Clegg* and *I. J. Saccomanno* and *James Rowland Gough,* all of Houston, and *Pollan & Nicholson,* of Rosenberg, for petitioner.

The Court of Civil Appeals errer in declaring revoked and of no further effect the written consent and transfer of custody previously given by Mrs. Harper to Catholic Charities and permanently enjoining said agency from consenting to the adoption of the said minor children by any one. Also said court erred in holding that a natural parent is entitled to withdraw his or her consent to adoption lawfully given to a licensed child-placing agency. DeWitt v. Brooks, 182 S.W. 2d 687; Herre v. Morris, 251 S.W. 2d 260; Oavis v. Sears, 35 S.W. 2d 99.

*Copeland, Kalvort & Benn,* and *John Benn,* of Houston, for respondent.

In response cited Paschke v. Smith, 214 S.W. 2d 205; Platt v. Moore, 183 S.W. 2d 682 and Smith v. Curtis, 223 S.W. 2d 712.

MR. JUSTICE CULVER delivered the opinion of the Court.

The precise question raised here has not been previously decided in this State. It is whether or not parents having surrendered their child to a child-placing agency licensed by the State Department of Public Welfare and having consented in writing for that agency to place the child for adoption, may, as a matter of right or law revoke that consent.

The respondent, Judith Ann Harper, was on July 17, 1958, a widow and the mother of two young children. On that date she executed and delivered to Catholic Charities a written instrument duly acknowledged, surrendering and transferring the care, custody and parental authority of and over these children to Catholic Charities and consented therein to the placement by it of the children for adoptoon. Catholic Charities accepted the children and on or about September 3, 1958, placed them for adoption in the home of a suitable married couple. On August 29, 1958, Mrs. Harper married her present husband. On October 7 following she notified Catholic Charities that she was withdrawing her consent to the placement for adoption of her children and demanded their return. Upon the refusal of Catholic Charities to comply she filed this suit.

The trial court granted summary judgment, holding the written consent of placement to be revoked and therefore null and void and permanently enjoined Catholic Charities from giving any further consent for the adoption of the children to any persons. The Court of Civil Appeals has affirmed. 331 S.W. 2d 761.

We here reverse and render judgment in favor of Catholic Charities.

The Court of Civil Appeals in upholding the right of Mrs. Harper to withdraw her consent and in effect to regain possession of her children, relied upon those decisions such as Wilde v. Buchanan, 157 Texas 606, 305 S.W. 2d 778, and Boyed v. Wilson, Texas Civ. App., 258 S.W. 2d 223, wr, ref., that recognize the unconditional right of the parent to withdraw

consent theretofore given for adoption at any time before the Court has granted the petition for adoption. We think those decisions are sound, resting as they do, on the basis that the statute gives the Court the power to grant adoption only where the adoption is consented to by the natural parent. The consent must be effective and continuing up until the time of the judgment entry. But that is not to say that these decisions control in the instant situation.

In 1951 the Legislature enacted an amendment to Sec. 6, Art. 46a, Vernon's Annotated Civil Statutes, that created a new exception to the necessity for consent by the natural parents to a specific adoption so that the Act now reads in part as follows:

*"Consent of Parents and Child; Exceptions*

"Sec. 6.    Except as otherwise provided in this Section, no adoption shall be permitted except with the written consent of the living parents of the child; * * * In the case of a child placed by its parents in a child-placing agency or institution licensed by the State Department of Public Welfare to place children for adoption, it shall be sufficient for the living parents to consent in writing that such agency or institution place such child for adoptoon, and no further consent shall be required of such living parent."

The emergency clause to that Act is pertinent in revealing the legislative purpose and intention. It reads in part as follows:

"The fact that many adoption petitions now being filed do not disclose sufficient information to enable the State Department of Public Welfare to efficiently perform the responsibilities placed on it by present law; the fact that the present adoption laws do not expressly permit parents to place children for adoption with a licensed child-placing agency or institution and confer on such institution the power to consent to the adoption without disclosing to the natural parents the names of the adoptive parents * * *." Acts 1951, 52nd Legislature, p. 388, ch. 249.

Under this section of the statute, consent by the parent to any specific adoption is not required. It is only necessary that the parent consent in writing that the child be placed for adoption. The effect of the statute obviously is that after the parental consent for placement is given the child-placing agency stands in

loco parentis to the child and is clothed with the authority to give or withhold the consent necessary to the entry of a judgment for adoption. In our case the Catholic Charities had acted under the consent, freely given by the mother. It had placed the children, after the usual investigation, with the prospective foster parents under whose care the children had remained for thirty days prior to the attempted revocation. Mrs. Harper asserted no ground for her claimed revocation of consent to placement other than that she desired to regain the possession and custody of her children.

The other exceptions set out in section 6 where the consent of the parent or parents is not necessary are, (1) when they have voluntarily abandoned and deserted the child for a period of two years; (2) when they have not contributed substantially to the support of the child commensurate with their financial ability for a period of two years, and (3) where parental rights have been terminated by order of a court of competent jurisdiction. If adoption is sought under those exceptions consent therefor is vested in the judge of the juvenile court or of the county court of the county of the child's residence. The consent of the parent or parents to the adoption is no longer required. The right of the juvenile judge or county judge, as the case may be, to give consent for the adoption is absolute and no power remains in the natural parent to revoke that consent. Thus, as in our case, where the parent freely and voluntarily and in writing surrendered permanent care and custody to the child-placing agency the authority over and control by the parent of the child have been as effectively terminated as in the other exceptions contained in this Act.

The adoption laws of the State of Michigan are similar to ours in that consent to adoption shall be obtained from parents unless (1) parental rights are terminated by a court of competent jurisdiction, or (2) unless the child has been released by a living parent to a licensed state child-placing agency evidenced in writing and duly acknowledged before a probate judge. Compiled Laws of Michigan, 1948, Adoption, section 710.3.

In Gonzales v. Toma, 330 Mich. 35, 46 N.W. 2d 453, the Court had under consideration the same question here presented under a very similar fact situation. In that case the mother sought to revoke a written release duly acknowledged placing her child for adoption with a regular agency licensed by the State. She maintained that it was within her power to revoke at any time before the conclusion of the adoption proceedings.

In ruling against that right of revocation the Court distinguished her case from one where the parents had not released the child to a licensed placement agency and consent of the parents to adoption was therefore required by statute, which consent, as we held in Wilde v. Buchanan, supra, could be revoked at any time prior to the decree of divorce. The Michigan Court, however, said that where the mother had released the child to the placement agency, her consent to adoption was not required, but only the consent of the agency, and by the execution of the release the mother voluntarily terminated permanently her rights to and control over the child. It is true that the Court emphasized that the probate judge had explained to the mother, as required by statute, that in signing the release her rights to the child would be permanently terminated, but we think that is not sufficient to make a material distinction in the effect of our statute. See also In Re Magee, 74 S.D. 286, 52 N.W. 2d 99; Hurley v. St. Martin, 283 Mass. 415, 186 N.E. 596; People, ex rel Miller v. Butts, 99 N.Y.S. 2d 913.

The Legislature has wisely safeguarded the interests and welfare of children subject to adoption. Provision is made for licensing and supervision of child-placing agencies and no person, association or corporation may place children for adoption whether occasionally or otherwise without obtaining a license from the State Department of Public Welfare except the natural parent. Art. 695c, sec. 8a.

The 53rd Legislature amended section 8(a) 2(e) of this article so as to put these child-placing agencies entirely in the category of non-profit institutions by providing that they shall be prohibited from charging a fee for child-placing activities from the natural or foster parents. The license to operate as such is to be issued by the Department of Public Welfare without any fee.

Even after placement, prececed by a careful and personal investigation of the character, environment, health, financial responsibility and other qualifications of the prospective adoptive parents, the child is to live in their home for a period of six months before adoption may be granted except in cases of emergency. Art. 46a, section 3. Naturally the purpose of this provision is to allow a reasonable time for an adjustment of the relations, to be sure that the child is suited to the home and that the home is suited to the needs of the child. To permit revocation without legal cause would encourage anxious foster parents to seek or trump up some plausible grounds for a state

of emergency in order to obtain an early adoption judgment fearful that, lest during the period of probation, the natural parents should change their minds. This would tend to defeat the wise legislative safeguard established to protect the child. It would hardly have been in contemplation of the Legislature that, after these steps had been taken, involving not only expense, time and trouble, but what is important the formation of ties of love and affection, all of this should be nullified and set at naught for no reason other than that the natural parents have changed their minds and desire to have the children restored to them.

■ It cannot be too strongly emphasized that the Legislature in enacting the adoption procedure and in all of the changes and amendments made thereto have had uppermost in mind the safety, education, care and protection of the children to be affected thereby and not primarily the contentment or welfare of either the natural or the adoptive parents. That solicitude is revealed in the emergency clause to the first modern adoption statute enacted in this State as follows:

"The fact that the present Statutes relating to the adoption are out of date and failed to provide any supervision of the proposed adoption, and fail to secure any protection of children to be adopted and of the reliability and character of those proposing such adoption, creates an emergency * * * * ." Acts 1931, 42nd Legislature, p. 300, ch. 177, sec. 12.

The human problem is stated in the report of the Texas Research League of Children's Services of the Texas Department of Public Welfare submitted December 1959, p. 100. We think it not amiss to quote as follows:

"Under existing law, parents who have consented to place their child for adoption can, at any time prior to the final adoption decree, withdraw their consent as a matter of right. Since, many times, the child has been living with the adoptive parents for months, this can be severely upsetting to the child, as well as to the adoptive parents who have developed an affection for the child. The issue involved is the rights of the natural parent v. the rights of the child. It would seem logical that no child be placed in an adoptive home until its parents had given their consent; and once this was obtained the burden should rest with the parents to show that the best interests of the child would be served by his being returned to them. Only in this way can the best interests of the child be protected."

■ We hold that where the parents have surrendered their child to the custody of an agency licensed by the State Department of Public Welfare to place children for adoption and have given their written consent that such agency may place the child for adoption, that consent is subject to revocation only by proof of fraud, misrepresentation, overreaching and the like.

It may seem that a rather fine line of distinction is here drawn; but we think the basis therefor is substantial and comports with the intention of the Legislature as we construe the statute. To hold otherwise would in our opinion extend the holding in Wilde v. Buchanan to an unreasonable degree and run contrary to the weight of the considered and convincing authorities in other jurisdictions.

■ Admittedly there are no facts in dispute. Both parties moved for summary judgment. This Court is authorized therefore to render the judgment that in its opinion the trial court should have granted. Gulf, C. & S. F. Ry. Co. v. McBride, 159 Texas 442, 322 S.W. 2d 492; Tobin v. Garcia, 159 Texas 58, 316 S.W. 2d 396.

The judgments of both courts below are reversed and rendered in favor of petitioner, Catholic Charities.

Opinion delivered July 6, 1960.