**Peggy Ledesma ROGERS, Appellant,**

**v.**

**Thomas E. SEARLE et ux., Appellees.**

**No. 1052.**

Court of Civil Appeals of Texas, Corpus Christi.

Jan. 30, 1976.

Rehearing Denied Feb. 26, 1976.

See also, Tex.Civ.App., 533 S.W.2d 440.

Roy T. Ahrens, Houston, for appellant.

James G. Lempert, Houston, for appellees.

## OPINION

BISSETT, Justice.

This is an appeal from a judgment which dismissed a petition for an equitable bill of review. Peggy Ledesma Rogers, petitioner in the trial court, filed a petition in Juvenile Court Three of Harris County, Texas, on January 15, 1975, wherein she sought to set aside an alleged order of that court, purportedly signed on December 9, 1974, that allegedly terminated her parental rights with respect to her minor son, Scott Anthony Rogers. The cause proceeded to trial before a jury on March 6, 1975. After the petitioner rested, Thomas E. Searle and wife, Lillian Ruth Searle (erroneously named as Lillian E. Searle in the pleadings), defendants to the action for a bill of review, moved for a directed verdict on the ground that petitioner failed to prove a prima facie case. The motion was granted, and the trial court signed a judgment of dismissal on April 3, 1975. Peggy Ledesma Rogers has appealed from that judgment.

Appellant, in her first amended petition for a bill of review, her trial pleading, alleged, among other allegations, that on or about September 1, 1974, she executed "an Affidavit of Relinquishment of Parental Rights and Waiver of Citation, the exact contents of which are not known to her"; that she was "coerced into signing the aforementioned affidavit"; and that her parental rights to her son were terminated on or about December 9, 1974 by order of "Juvenile Court Number Three of Harris County, Texas". She further alleged that she had a meritorious defense to the parental rights termination proceedings, but that she "was prevented from presenting her defense due to the extrinsic fraud and duress used to obtain the Affidavit of Relinquishment of Parental Rights and Waiver of Citation".

Appellant, in point of error 1, contends that the trial court erred in granting defendants' (appellees') motion for a directed verdict because the evidence, viewed in the light most favorable to her, raised a fact question "as to extrinsic fraud, duress, accident or mistake". In point 4, appellant asserts that it was error to grant the motion for a directed verdict because the evidence raised a fact question as to whether she "knowingly and intelligently waived a known legal right, i. e., the right to be notified and advised of any court proceedings with regard to the termination of her parental rights."

Since the trial court directed a verdict in favor of the appellees, we are required to view the evidence in the light most favorable to appellant, the losing party in the trial court, to indulge against the judgment every inference that can be possibly drawn from the evidence, and to disregard all evidence and inferences adverse to appellant. *Seideneck v. Cal Bayreuther Associates,* 451 S.W.2d 752 (Tex.Sup.1970); *Bass v. General Motors Corporation,* 491 S.W.2d 941 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n. r. e.).

The material facts are undisputed. Appellant is the natural mother of Scott Anthony Rogers, who was born on February 6, 1973. The only witnesses who testified

were appellant and five persons called by her. The alleged order of December 9, 1974, which terminated her parental rights with respect to the child, was not introduced into evidence at the trial.

Appellant testified, in effect, as follows: 1) in September, 1974, she and her child, at appellees' invitation, moved into the home of appellees for the purpose of saving enough money to rent an apartment for herself and her child; 2) shortly thereafter, appellees arranged for the appellant to move into an unfurnished apartment; 3) since the child was ill and as appellant was in financial difficulties and did not have any furniture in her apartment, the child was left with the appellees; 4) appellees discussed adoption of the child with her, but "I was not for it"; 5) appellees were anxious to get her out of the house so they could be appointed "legal guardian" of the child; 6) appellees discussed guardianship with her, but never did tell her that they "were proceeding any further than a guardianship"; 7) on September 28, 1974, she signed an Affidavit of Relinquishment of Parental Rights and Waiver of Citation; 8) she signed the instrument for the purpose of allowing appellees to provide medical care for the child, and to enable them to take out a guardianship on him; 9) after she moved out of appellees' home, she was allowed to see the child until December 24, 1974, when she was told that she could no longer see him; 10) at one time appellees told her that she would have to appear in court with them, but, subsequently, after she signed the "Affidavit and Waiver", they told her that she did not have to appear in court, "or something like that, which I thought there was not going to be a court hearing"; and 11) she did not, by signing the document intend to give her consent to either a termination of her parental rights or to an adoption of the child by anyone.

The body of Affidavit of Relinquishment of Parental Rights and Waiver of Citation, the only evidence introduced by appellees at the trial, is, in words and figures, as follows:

"I, PEGGY LEDESMA ROGERS, was born September 30, 1952 and reside at 11402 Beechnut, Apt. 129, Houston, Harris County, Texas. I am the mother of Scott Anthony Rogers, a male child born February 6, 1973, and who is now 19 months of age.

I am not presently obligated by court order to make payments for the support of the child.

The child owns no property.

The name and address of the father of the child is Kenneth Ray Rogers, 6301 S. Flores, San Antonio, Texas.

I hereby freely and voluntarily relinquish all my rights in and to this child and represent that this is in the best interest of the child.

I was fully informed of my rights, powers, duties and privileges as a parent before executing this affidavit. This affidavit is irrevocable.

I understand that this means that I cannot change my mind and ask for return of my child.

I execute this affidavit freely and voluntarily because I deem it to be in the best interest of the child.

I designate Thomas Eric Searle and Lillian Ruth Searle as qualified persons and suitable, competent adults to serve as managing conservators of the child if my parental rights are terminated.

I waive the right to issuance, service and return of citation upon me in a suit to terminate the parent-child relationship between the child and me and any other suit affecting the parent-child relationship between the child and me."

The document was signed by appellant in the presence of two witnesses, whose names are subscribed thereto, and before a notary public. Part of the notarial statement accompanying the document reads as follows:

"    .    .    .    The affiant stated to me on oath that she signed the above instru-

ment freely and voluntarily for the purposes stated in the instrument and with full understanding of the meaning of the instrument. . . . "

■ A bill of review is a proceeding in equity brought for the purpose of reversing a prior judgment of the trial court after the judgment has become final. *Johnson v. Barnwell Production Company*, 391 S.W.2d 776 (Tex.Civ.App.—Texarkana 1965, writ ref'd n. r. e.). The general rule with respect to obtaining relief by means of a bill of review is stated in 34 Tex.Jur.2d, Judgments, § 188, in these words:

"It has always been the law in this state that where, through no fault of his own, a party has been prevented by fraud, accident, or mistake from prosecuting his suit or making his defense, and an opportunity has not been afforded him for moving for a new trial within the time prescribed by law, he may thereafter bring a suit in equity to reopen the case and dispose of the litigation on its merits. . . . "

■ The rules applicable to a bill of review were laid down by our Supreme Court in *Alexander v. Hagedorn*, 148 Tex. 565, 226 S.W.2d 996 (1950). They were restated and thoroughly discussed in *Hanks v. Rosser*, 378 S.W.2d 31 (Tex.Sup.1964); in *Gracey v. West*, 422 S.W.2d 913 (Tex.Sup.1968), and in *French v. Brown*, 424 S.W.2d 893 (Tex.Sup. 1967). In order for a losing party to successfully set aside a final judgment by a bill of review, it is imperative that he allege and prove: 1) a meritorious claim or defense with respect to the action that resulted in a judgment which was adverse to him; 2) which he was prevented from making in the prior proceeding by fraud, duress or wrongful conduct of the opposite party, or by accident or mistake; 3) unmixed with any fault or negligence on his part; and 4) that no other remedy is available to him.

■ Fraud which will justify the setting aside of a final judgment in a bill of review proceeding must be extrinsic, and not intrinsic. *O'Meara v. O'Meara*, 181 S.W.2d 891 (Tex.Civ.App.—San Antonio 1944, writ ref'd).

In the case of *State v. Wright*, 56 S.W.2d 950, 952 (Tex.Civ.App.—Austin 1933, no writ), Justice Baugh, in writing the opinion for the court, used the following language:

"But the fraud which will authorize vacation by the court of its former judgment in such case must be what has been termed 'extrinsic fraud.' By that is meant fraud by the other party to the suit which has prevented the losing party either from knowing about his rights or defenses, or from having a fair opportunity of presenting them upon the trial. Such, for instance, as where he has been misled by his adversary by fraud or deception, did not know of the suit, or was betrayed by his attorney. In other words, fraud which denied him the opportunity to fully litigate upon the trial all the rights or defenses he was entitled to assert. . . . "

That language was quoted with approval in *Crouch v. McGaw*, 134 Tex. 633, 138 S.W.2d 94, 97 (1940), and in *Alexander v. Hagedorn*, supra.

■ Unless the petitioner brings himself strictly within the rules providing for relief against the prior judgment and makes out a prima facie case in the bill of review proceeding, there is clearly no abuse of discretion in denying relief from a judgment that is valid on its face, absent fundamental error. *Smith v. Ferrell*, 44 S.W.2d 962 (Tex.Comm'n App.1932, holding approved); *Falsetti v. Lowman*, 405 S.W.2d 796 (Tex. Civ.App.—Eastland 1966, writ ref'd n. r. e.). " . . . [B]ills of review seeking relief from judgments 'are always watched by courts of equity with extreme jealousy, and the grounds on which interference will be allowed are narrow and restricted'; and the rules are not to be relaxed merely because it may appear in some particular case that an injustice has been done." *Alexander v. Hagedorn*, supra, at page 998.

Even though the decree of termination of parental rights between appellant and her

child is not in the record, both parties agree that such a decree was signed by the judge of Juvenile Court Number Three of Harris County, Texas, on December 9, 1974, and that said decree became final before the petition for the bill of review was filed. We presume that the judgment was valid on its face.

There is no evidence that the judgment which terminated appellant's parental rights resulted from accident or mistake. Likewise, there is no evidence that appellant's signature to the "Affidavit and Waiver" was obtained by duress.

Appellant contends that she was prevented from knowing about her rights or defenses or from having an opportunity to present her defenses at the trial because the appellees withheld information about court dates, misrepresented the time the court proceedings were to commence, and continued to allow the appellant to see her child. There are several statements in the record made by appellant and her witnesses to the effect that the appellant thought or believed that only a guardianship proceeding was intended by appellees. There is however, no direct evidence that appellees ever told appellant that the affidavit she signed and the subsequent court proceedings were only for the purpose of taking out a guardianship on the child. There is no evidence that appellees ever withheld any information from appellant which they were obligated to disclose. Appellees did not tell appellant anything with respect to the parental rights termination proceedings; they were under no legal duty to inform her of such proceedings or the date of any court hearing relating thereto. There is no direct evidence that appellees misrepresented to appellant on what date the parental rights termination proceeding was to be held, or the time the proceedings were to commence.

The record does reveal that appellees allowed appellant to see the child until December 24, 1974. They did not permit her to see him after that date. However, the permission to see the child cannot constitute any form of extrinsic fraud under the circumstances of this case. Such action by appellees did not prevent appellant from knowing of a right, nor did it prevent her from presenting a defense at the trial which terminated her parental rights to the child.

Appellant's testimony that she did not know what she was doing when she signed the "Affidavit and Waiver", and that she thought that she was signing an instrument in order for appellees to take out a guardianship on the child, does not raise a fact issue as to extrinsic fraud by appellees. Those personal thoughts and beliefs, do not charge appellees with fraud. They will not support an inference that appellees misled appellant in any way, nor do they form a basis for a contention that appellees prevented appellant from knowing her legal rights, or from having a fair opportunity of presenting her defenses at the trial. Moreover, appellant testified that she was capable of reading and understanding the English language, and that she did read the instrument in question at the time she signed it. There is no evidence that appellees fraudulently obtained appellant's execution of the "Affidavit and Waiver" by "misrepresenting the type of instrument she was signing", as stated by counsel for appellant in her brief.

In *Hamer v. Hope Cottage Children's Bureau, Inc.,* 389 S.W.2d 123 (Tex.Civ.App.—Dallas 1965, no writ), three children were declared to be neglected and dependent and were placed for adoption by decree signed on October 3, 1963. Previously thereto, on April 4, 1963, the mother of the children signed three written documents consenting to the adoption of the children. Thereafter, the mother filed a bill of review to set aside the judgment of October 3, 1963, on the ground that she had been "coerced by circumstances" into signing the consents, and that she did not read the consent documents before signing them. The trial court granted a directed verdict against the petitioner, which was upheld by the Court of Civil

Appeals. In the opinion, it was noted that the defendants did not cause or create the misfortunes which prompted the mother to sign the consent documents, and it was said: "having had full opportunity to read the documents before signing them she will not be permitted to avoid the agreements on the ground that she was mistaken or ignorant of their contents".

In the case at bar, it is conclusively shown that appellant was able to read, was capable of understanding what she had read, and did read the instrument before she signed it. Nowhere in the document is there any mention of a guardianship. It was plainly stated therein that appellant freely and voluntarily relinquished all rights to the child, and that she waived "the right to issuance, service and citation upon me in a suit to terminate the parent-child relationship between the child and me". No language could be more explicit.

■ Appellant should not now be permitted to avoid the effect and consequences of her signing the document on the ground that she neither knew nor understood what she was doing when she signed it. Furthermore, if judgments are to be set aside on the ground that the party who signed a document that had a material effect on the rendition of the judgment that is attacked in a bill of review on the ground that he did not understand what he was signing, it is obvious that there would be no end to suits by the losing party after their cause had already been once adjudicated.

■ The general discussion of guardianship and adoption did not amount to a representation by appellees that they were seeking a guardianship of the child. The conclusions and deductions which appellant drew from the conversations with appellee do not constitute extrinsic fraud on the part of appellees. There is no evidence that appellees misrepresented anything to appellant or that any representations by them constituted extrinsic fraud which prevented appellant from knowing her rights or presenting her defenses to the action

brought to terminate her parental rights to the child.

If the testimony of appellant and her witnesses with respect to what appellant thought appellees intended, or their subjective understanding of what was meant by appellees' representations, constituted any evidence of extrinsic fraud, then, at best, such evidence amounted to no more than a scintilla, which was insufficient to raise an issue of fact. See *Green v. Texas & P. Ry. Co.*, 125 Tex. 168, 81 S.W.2d 669 (Tex.Com. App.1935, opinion adopted); *Hogue v. El Paso Products Company*, 507 S.W.2d 246 (Tex.Civ.App.—El Paso 1974, writ ref'd n. r. e.); *Hunter v. Carter*, 476 S.W.2d 41 (Tex. Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.). Appellant's points 1 and 4 are overruled.

■ Appellant's point of error 3 asserts that the "Affidavit of Relinquishment" is void for failure to follow the requirements of Tex.Fam. Code Ann. § 15.03 (1975), thereby rendering the directed verdict improper. Specifically, appellant contends that the affidavit fails to state that it is irrevocable for 60 days, but rather states only that it is "irrevocable". Subsection (b)(9) of the statute reads:

"(b) The affidavit must contain:

\*　　\*　　\*　　\*　　\*　　\*

(9) a statement that the relinquishment is revocable, or that the relinquishment is irrevocable, or that the relinquishment is irrevocable for a stated period of time."

Subsection (d) of the statute provides, in part:

". . . Any other affidavit of relinquishment is revocable unless it expressly provides that it is irrevocable for a stated period of time not to exceed 60 days after the date of its execution."

In the instant case, under the above-quoted provisions of the statute, the Affidavit of Relinquishment was revocable until December 9, 1974, when the decree was signed which terminated appellant's parental rights with respect to the child. See Tex.

**440**

Fam.Code Ann. § 15.07 (1975). The Affidavit of Relinquishment, signed by appellant, was not void. It met the requirements of Tex.Fam.Code Ann. § 15.02(1)(I) (1975). Appellant's point 3 is overruled.

█ We overrule appellant's point 5, wherein she claims that the waiver provision of Tex.Fam.Code Ann. § 15.03 (1975) is unconstitutional because it violates Art. I, § 19 of the Texas Constitution and the 5th and 14th Amendments to the Federal Constitution. See *Hamer v. Hope Cottage Children's Bureau, Inc.*, supra; *Catholic Charities of the Diocese of Galveston, Inc. v. Harper*, 161 Tex. 21, 337 S.W.2d 111 (1960); *D. H. Overmyer Co., Inc. v. Frick Company*, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964). The right to notice can be waived. It was waived in this case. The statute in question which provides for waiver of process in a suit brought to terminate the parent-child relationship is not unconstitutional.

We have also carefully considered appellant's point 2. It has no merit, and is, accordingly, overruled.

The judgment of the trial court is affirmed.