**Sarah SWEEP et al., Plaintiffs-Appellants,**

v.

**LEAR JET CORPORATION, Defendant-Appellee.**

No. 26393.

United States Court of Appeals
Fifth Circuit.

May 27, 1969.

Rehearing Denied June 24, 1969.

David M. Kendall, Jr., Robert P. Woodruff, Dallas, Tex., for appellants, Woodruff, Hill, Kendall & Smith, Dallas, Tex., of counsel.

W. Spencer Mitchem, Pensacola, Fla., Lucian Touchstone, A. L. Breeland, M. I. Irion, Touchstone, Bernays & Johnston, Dallas, Tex., for appellee.

Before TUTTLE and GEWIN, Circuit Judges, and PITTMAN, District Judge.

GEWIN, Circuit Judge:

James Sweep and William Majowski were fatally injured when the jet aircraft in which they were flying crashed

near Clarendon, Texas, on April 23, 1966. The appellants, widows of Sweep and Majowski, brought wrongful death actions in the United States District Court for the Northern District of Texas against the appellee, Lear Jet Corporation, manufacturer of the aircraft.[1] Lear moved for partial summary judgment, contending in effect that any award which the appellants might obtain against Lear should be reduced by $200,000, an amount paid to the appellants as a result of the crash by a third party's insurance carrier. The district court granted the motion. This is an appeal from that interlocutory order.[2] We reverse.

The ill-fated aircraft, a Lear jet, was owned by Foundation Aircraft Corporation and was leased to Rexall Drug and Chemical Company. At the time of the crash, the plane was piloted by Majowski, a Rexall employee, who was accompanied by Sweep, a Federal Aviation Agency flight inspector. Rexall was insured by a policy [3] which provided that *regardless of the insured's legal liability*, the insurer would pay, at the request of Rexall, a sum not exceeding $100,000 upon the accidental death of any person aboard the aircraft with Rexall's permission. A separate provision of the policy provided that the insurer would pay certain sums which the insured became *legally obligated* to pay because of bodily injury or death resulting from operation of the aircraft.

Shortly after Sweep and Majowski were killed, Rexall requested, pursuant to the non-liability provision of the policy, that payments of $100,000 be made to the parties entitled to receive them. Thereupon, the appellants instituted state court proceedings and obtained judgments declaring that they were the persons entitled to receive the payments and that, since there was no evidence on which to base a cause of action for negligence against Rexall, it would be in the interest of the minor survivors of Sweep and Majowski that the payments be accepted. Then, the appellants, in compliance with a requirement of the policy, executed covenants not to make any demands upon the insurer or Rexall based upon any cause of action the appellants might have or which might accrue to them as a result of the crash.[4] The insurer, in turn, paid the sum of $100,000 to each set of claimants. The district court's order directed that a credit for these payments be allowed against the amount of any judgment recovered by the appellants against Lear. Therefore, to credit or not to credit is the question on this appeal. Since we are *Erie*-bound, the answer must be found in the body of Texas jurisprudence.

■ As in most jurisdictions,[5] it is the rule in Texas that a tort-feasor's obligation to make restitution for the injury he has caused is undiminished by any compensation received by the injured party from an independent or col-

---

1. The suit was instituted by Mrs. Sweep on behalf of herself, her son, and her husband's parents. Subsequently, Mrs. Majowski intervened seeking recovery, individually, and on behalf of her son, and her husband's parents. The district court's jurisdiction is based upon diversity of citizenship. The record indicates that Lear Jet Corporation and its successor, Lear Jet Industries, are defendants. They are generally referred to in the briefs and records as Lear.

2. Leave to appeal from the interlocutory order was granted by an appropriate order of this court.

3. Named in the policy as insureds were the following: Foundation Aircraft Com-

pany; Rexall Drug and Chemical Company and its affiliate or subsidiaries; and Justin Dart, president of Rexall. We shall refer to these parties simply as Rexall.

4. The Majowski covenant reserved rights to workmen's compensation benefits, and both covenants reserved any rights or causes of action the appellants might have against parties other than Rexall and its insurer. The state court declaratory judgments also held that such rights were reserved.

5. Note, Unreason in the Law of Damages: The Collateral Source Rule, 77 Harv.L. Rev. 741 (1964).

lateral source.[6] Commonly referred to as the "collateral source" rule, the principle has been set out in a Texas case as follows:

> [T]he fact that an injured person receives from a collateral source payments which may have some tendency to mitigate the consequences of the injury which he otherwise would have suffered may not be taken into consideration in assessing the damages or other recovery to which the claimant may be entitled.[7]

More concisely stated, the rule is that

> no abatement of damages on the ground of partial compensation can properly be made where the evidence shows the funds have been received from a collateral source independent of the defendant.[8]

The collateral source rule, while frequently criticized as being at odds with the compensatory purpose of tort liability, has nonetheless been widely adopted as a means of burdening the wrongdoer with the full consequences of his act and preventing him from reaping benefits intended for the injured party. The rule is underpinned by the equitable notion often expressed by courts that, if there is to be a windfall, the injured party is more justly entitled to it than the wrongdoer.[9] In the case *sub judice*, the rule, if applicable, clearly precludes Lear from obtaining the $200,000 credit it seeks.

The facts before us are significantly analogous to facts considered by the Texas court in Edmondson v. Keller.[10] There, the plaintiff sought to recover for personal injuries sustained while she was a passenger in an automobile driven by the defendant. The car was owned by a third party whose automobile insurance coverage provided that, in the event of a collision, medical expenses incurred by occupants of the car would be paid by the insurer. Pursuant to this provision, the insurer paid the plaintiff's medical expenses. A jury verdict was returned for the plaintiff awarding him, *inter alia*, the reasonable value of medical services rendered him. Applying the collateral source rule, the trial court denied the defendant's request to credit against the judgment the payments made to plaintiff by the auto owner's insurer

6. A. H. Bull Steamship Co. v. Ligon, 285 F.2d 936, 937, 88 A.L.R.2d 479 (5th Cir. 1960); Kainer v. Walker, 377 S.W.2d 613, 617 (Tex.1964); Green v. Texas & P. Ry. Co., 125 Tex. 168, 81 S.W.2d 669, 673 (Com.App.1935), opinion adopted by S.Ct.; Edmondson v. Keller, 401 S.W.2d 718, 721 (Tex.Civ.App.1966); Traders & Gen. Ins. Co. v. Reed, 376 S.W.2d 591, 593 (Tex.Civ.App.1964); R. E. Dumas Milner Chevrolet Co. v. Morphis, 337 S.W. 2d 185, 187 (Tex.Civ.App.1960, writ ref. n. r. e.); Green v. Rudsenske, 320 S.W.2d 228, 236 (Tex.Civ.App.1959); Chapman v. Evans, 186 S.W.2d 827, 831 (Tex.Civ. App.1945); Texas Cities Gas Co. v. Dickens, 156 S.W.2d 1010, 1018 (Tex.Civ.App. 1941), aff'd 140 Tex. 433, 168 S.W.2d 208 (1943); Graves v. Poe, 118 S.W.2d 969, 970–971 (Tex.Civ.App.1938, writ dism'd); 17 Tex.Jur.2d, Damages § 103 (1960).

7. Traders & Gen. Ins. Co. v. Reed, 376 S.W.2d 591, 593 (Tex.Civ.App.1964).

8. Graves v. Poe, 118 S.W.2d 969, 970 (Tex. Civ.App.1938, writ dism'd).

9. Fleming, The Collateral Source Rule and Loss Allocation in Tort Law, 54 Calif.L. Rev. 1478, 1482–83 (1966); Note, Unreason in the Law of Damages: The Collateral Source Rule, 77 Harv.L.Rev. 741, 741–42 (1964); see 14 Ala.L.Rev. 148, 159–60 (1961). In his article, Professor Fleming states:

> The constantly recurring refrain, with strong overtones of moral outrage, is that the defendant is a wrongdoer who should not be "let off" from any portion of what is his due by the exertions and foresight of his victim or those who stood by him in his hour of need. To anyone a little troubled by the notion that this might mean double recovery for the plaintiff, the stereotyped response has been that this is still better than letting the defendant profit, and that, in any event, the damages awarded to a plaintiff at least in personal actions never fully indemnify him for his loss, especially when account is taken of the fact that a large slice of it will find its way into the pocket of his attorney.

54 Calif.L.Rev. at 1483.

10. 401 S.W.2d 718 (Tex.Civ.App.1966).

and, on appeal, the court's action was affirmed as a correct application of the rule.

Similarly, in Graves v. Poe,[11] the plaintiff sought to recover for injuries which he sustained as a business invitee of the defendant. The trial court allowed the defendant to show, in mitigation of damages, that the plaintiff's medical expenses had been paid by the insurer of the plaintiff's employer. The appellate court reversed, observing that the suit was not against the employer and that the payments made by the employer's insurer assumed the character of a gift to the plaintiff; thus the court held that the benefit of the payments should not accrue to the defendant.

It appears well established that the Texas courts are unwilling to allow a tort-feasor to profit from the injured party's prudence in protecting himself with insurance coverage or from the benefits inuring to the injured party from any insurance contract lacking privity with the tort-feasor. In Texas Cent. R. R. Co. v. Cameron, the court stated:

> There was no error in refusing to permit the defendant to prove by plaintiff on cross-examination that he held an accident insurance policy at the time of the injury complained of, and collected from that company a sum of money to compensate him for the time lost on account of the injury. It is well settled by the authorities in this state that a tort-feasor through whose negligence an injury is sustained can-

not be accorded any benefits of such a policy, for which it has paid nothing in mitigation of the damages allowed by law for tort.[12]

We are convinced that the facts of the case *sub judice* fall well within the embrace of these cases and others which have accorded the collateral source rule similar application.[13]

■ In reaching this conclusion, we reject Lear's vigorously urged contention that, because the appellants executed agreements extinguishing all tort claims they might have against Rexall, the nature of the transaction between the appellants and Rexall was that of a settlement between a claimant and a tort-feasor and that this case is, therefore, governed by the joint tort-feasor credit rule. As stated by a Texas court:

> [J]oint tort-feasors, when sued for damages by reason of some alleged injury or wrong, have generally been held entitled to show, for the purpose of mitigating or reducing damages, that the same injury or wrong was partially compensated by a payment made by another joint tort-feasor * * *.[14]

However, it has not been established that Rexall was a tort-feasor. Nor is there anything in the record to suggest that the appellants, at any time prior to receiving payments from Rexall's insurer, asserted or threatened to assert a tort claim against Rexall. To the contrary, in the state court actions instituted by the appellants to establish that they were the proper parties to receive the insur-

---

11. 118 S.W.2d 969 (Tex.Civ.App.1938, writ dism'd).

12. 149 S.W. 709, 710–711 (Tex.Civ.App. 1912).

13. Green v. Texas & P. Ry. Co., 125 Tex. 168, 81 S.W.2d 669, 673 (1935); opinion adopted by S.Ct.; R. E. Dumas Milner Chevrolet Co. v. Morphis, 337 S.W.2d 185, 187 (Tex.Civ.App.1960, writ ref'd n. r. e.); Green v. Rudsenske, 320 S.W.2d 228, 236 (Tex.Civ.App.1959); Chapman v. Evans, 186 S.W.2d 827, 831 (Tex.Civ. App.1945).

14. Hill v. Budget Fin. & Thrift Co., 383 S.W.2d 79, 81 (Tex.Civ.App.1964); *accord*, Riley v. Industrial Fin. Serv. Co., 157 Tex. 306, 302 S.W.2d 652, 656 (1957); Bradshaw v. Baylor University, 126 Tex. 99, 84 S.W.2d 703, 705 (1935), *opinion adopted by S.Ct.* Gattegno v. The Parisian, 53 S.W.2d 1005, 1008 (Tex. Com.App.1932); Skyline Cab Co. v. Bradley, 325 S.W.2d 176, 183 (Tex.Civ.App. 1959, ref'd n. r. e.); McMullen v. Coleman, 135 S.W.2d 776, 778 (Tex.Civ.App. 1940).

ance proceeds and that receipt of the proceeds would be in the best interest of the minors involved, they alleged that they had no cause of action against Rexall. Mrs. Sweep's complaint stated:

[T]hese Plaintiffs have through themselves and through others acting for them investigated the airplane crash in which James Darrell Sweep, Deceased, was killed and are of the opinion and here and now assert and allege, based on said investigation, that * * * Rexall * * * [is] not in any way liable for the airplane crash made the basis of this suit and * * * [is] not legally liable to these Plaintiffs for the death of James Darrell Sweep, Deceased, and Plaintiffs believe and here now allege that but for the insurance policy herein described, these Plaintiffs have no cause of action against Defendants herein.

A similar allegation was contained in Mrs. Majowski's complaint.[15] Moreover, in each of the state court proceedings, final judgments were entered declaring that, since there was no indication that the crash was proximately caused by the negligence of Rexall, the appellants had no cause of action against Rexall except under the terms of the insurance policy.[16] In the circumstances of this case, the appellants' acceptance of the insurance payments and execution of the requisite agreements cannot fairly be construed as a recognition by the appellants that Rexall was a tort-feasor which contributed to their loss.

 It is obvious that the collateral source rule and the joint tort-feasor rule are capable of compatible coexistence only if their differing fields of operation are recognized and respected. The collateral source rule purports to place upon the defendant-tort-feasor the full burden of his wrongdoing. If, however, the plaintiff's injury is the product of the combined wrongdoings of the defendant and a settling joint tort-feasor, the credit rule intercedes to ensure that the defendant will not be burdened with full restitution for an injury which (1) by settlement of a *tort claim,* the plaintiff implicitly attributes in part to the settling party or (2) by adjudication, the settling party is determined to be partially responsible.[17] The compatibility of the

---

15. Mrs. Majowski's complaint alleged that Rexall's legal liability resulting from the death of her husband was limited to payment of workmen's compensation benefits. Mrs. Sweep's complaint was filed in the District Court of Dallas County, Texas, Fourteenth Judicial District, and Mrs. Majowski's was filed in the Superior Court of Sussex County, New Jersey.

16. The Texas court held:
 (2) That Plaintiffs herein have no cause of action against Foundation Aircraft Company, Justin Dart, Rexall Drug & Chemical Company and Affiliates and Subsidiaries of Rexall Drug & Chemical Company save and except under the terms and provisions of said insurance policy in that there is no indication that the airplane crash in which James Darrell Sweep, Deceased, was killed was proximately caused by negligence on the part of Defendants Foundation Aircraft Company, Justin Dart, Rexall Drug & Chemical Company and Affiliates and Subsidiaries of Rexall Drug & Chemical Company.

The final judgment of the New Jersey court contained substantially the same language.

17. This analysis, in addition to permitting the two rules to function compatibly, brings into harmony some cases which otherwise appear inconsistent. In McMullen v. Coleman, 135 S.W.2d 776 (Tex. Civ.App.1940), the court held that, where the plaintiff settled during the trial with one of two alleged tort-feasors and the jury found the settling defendant free from liability, the credit rule, nevertheless, was available to the non-settling party. Likewise, in Petco Corp. v. Plummer, 392 S.W.2d 163 (Tex.Civ.App.1965, ref'd n. r. e.), the court applied the credit rule in the absence of an adjudication that the settling parties were liable. But the settling parties, as in *McMullen,* originally had been sued as joint tort-feasors. However, in American Cooperage Co. v. Clemons, 364 S.W.2d 705 (Tex.Civ.App.1963), the court refused to apply the credit rule where there was insufficient evidence of liability. The City of Fort Worth made

two rules would be disrupted if the credit rule were applied in the case *sub judice* because: (1) the insurance proceeds paid to the appellants were not paid in settlement of a tort claim and, therefore, the appellants, by accepting the proceeds, were in no way attributing to Rexall the loss they had suffered and (2) Rexall has not been adjudicated a joint tortfeasor.

Lear relies upon a large accumulation of cases in which the credit rule has been invoked,[18] but in all these cases, with the exception of two decided prior to the advent of the collateral source rule,[19] either the settlement resulted from a tort claim asserted by the injured party or the settling party was subsequently adjudicated to be a joint tort-feasor. Therefore, the result we reach is not inconsistent with those cases.

■ We hold that the record before us does not sustain the trial court's ruling that Lear is entitled to the credit it seeks, and, accordingly, the judgment must be reversed. On the present record this case is governed by the collateral source rule. However, we do not intend to preclude application of the joint tort-feasor credit rule in the event subsequent developments in the trial bring the case within the scope of that rule.

Reversed.

payments to the plaintiff, a City employee, as a result of injuries he suffered while on the job. The payments were not in settlement of a tort claim. The plaintiff then sued American Cooperage to recover for his injury and American Cooperage, for contribution purposes, joined the City as a codefendant. The jury found that American Cooperage and the City were joint tort-feasors. On appeal, the court upset the finding that the City was a joint tort-feasor and refused to allow American Cooperage a credit for the amounts previously paid the plaintiff by the City.

18. Harrington v. Texaco, Inc., 339 F.2d 814 (5th Cir. 1964) ; Bradshaw v. Baylor

University, 126 Tex. 99, 84 S.W.2d 703 (1935), opinion adopted by S.Ct.; Hunt v. Ziegler, 271 S.W. 936 (Tex.Civ.App. 1925), aff'd, 280 S.W. 546 (Tex.Com. App.1926) ; opinion adopted by S.Ct.; Petco Corp. v. Plummer, 392 S.W.2d 163 (Tex.Civ.App.1965, ref'd n. r. e.) ; Atchison, T. & S. F. Ry. Co. v. Classin, 134 S.W. 358 (Tex.Civ.App.1911) ; El Paso & S. R. Co. v. Darr, 93 S.W. 166 (Tex. Civ.App.1906)

19. Atchison, T. & S. F. Ry. Co. v. Classin, 134 S.W. 358 (Tex.Civ.App.1911) ; El Paso & S. R. Co. v. Darr, 93 S.W. 166 (Tex.Civ.App.1906).