674 F.2d 351
 Shirley Ann HOWARD, Et Al., (Widow of Kenneth R. Howard,
Individually and as representative of the estate of Kenneth
R. Howard, Deceased, and as next friend of Vicki Howard and
Timothy Howard, Minor children of the deceased), Plaintiffs-Appellees,
v.
GENERAL CABLE CORPORATION, Defendant-Appellant.
 No. 80-2205.
 United States Court of Appeals,
Fifth Circuit.
 April 26, 1982.
 
 Strong, Pipkin, Nelson, Parker & Bissell, Kenneth L. Parker, James E. Montgomery, Jr., Sibley & Montgomery, Beaumont, Tex., for defendant-appellant.
 Gilbert T. Adams, Jr., Richard Clarkson, Browne & Browne, Ernest J. Browne, Jr., Beaumont, Tex., for plaintiffs-appellees.
 Appeal from the United States District Court for the Eastern District of Texas.
 Before WISDOM, SAM D. JOHNSON and WILLIAMS, Circuit Judges.
 JERRE S. WILLIAMS, Circuit Judge:
 
 
 1
 Kenneth R. Howard was employed by Southwestern Bell Telephone Company as a cable repairman in 1976 until he was electrocuted on March 7, 1977. Howard and a co-worker, Jimmy Jenkins, were sent by Southwestern Bell to assist a large tank truck in its passage along FM 1006 near Orange, Texas, by raising telephone cables that would otherwise block the vehicle's movement. This was to be accomplished through the use of an aerial lift truck manufactured by appellant General Cable Corporation. The telephone cable was mounted on a pole which also carried electrical wires.
 
 
 2
 When the men arrived at the proper place, Howard got into the bucket at the end of the truck's extendable arm. Jenkins remained on the ground to operate the lift controls. As Howard was ascending, Jenkins called out, "K. R., there's power," and Howard responded, "I see it, Jimmy." When Howard reached the cable, he placed it across the bucket and then raised the bucket, thereby lifting the cable and clearing the way for the large truck to pass underneath.
 
 
 3
 As the tank truck was passing, its top hit one of the electrical wires pushing the wires closer to Howard. He was electrocuted when the current arced from one of the wires onto him or when the current passed through the uninsulated bucket onto his body. Howard never actually touched the wires.
 
 
 4
 Howard's widow, estate, and children brought suit under the Texas Wrongful Death Act, Tex.Rev.Civ.Stat.Ann. art. 4671, against appellant, the manufacturer of the truck, and Magnolia Transportation Company and Dickey Electric Company, the two companies transporting the tank claiming $4,200,000.00 in compensatory damages. The complaint against Dickey included a request for $5,000,000.00 in exemplary damages in addition to the compensatory damages. Magnolia and Dickey settled with the Howards for $595,000.00. The claim against appellant was severed and proceeded to trial.
 
 
 5
 The Howards' theory of recovery against appellant was based on strict liability under the Restatement (Second) of Torts § 402 A. Their contention was that the aerial lift truck was unreasonably dangerous because its bucket was constructed of non-insulated, conductive metal and bore no warnings of the possible dangers to users who came near electrical wires while in the bucket. Had Howard been warned of the conductive nature of the bucket, they claimed, he would have kept a safe distance from the wires.
 
 
 6
 The jury found in the Howards' favor and awarded them $610,000.00 in compensatory damages. Appellant sought a credit for the amount paid in settlement by Magnolia and Dickey but the court refused to allow the credit and entered judgment in the amount of $610,000.00.
 
 
 7
 In this appeal, appellant challenges the court's refusal to grant its motions for directed verdict or judgment n. o. v. on the issues of its duty to warn Howard of the dangers involved in using the uninsulated lift truck, the affirmative defense of voluntary assumption of the risk, and proximate cause. Appellant also alleges error in the jury charge and in the court's refusal to allow a credit for the $595,000.00 settlement paid by Magnolia and Dickey. We address each of these issues individually.
 
 DUTY TO WARN
 
 8
 Appellant's first point on appeal is that the court erred in refusing to grant its motions for directed verdict or judgment n. o. v. on the issue of the duty to warn Howard of potential dangers involved in using the uninsulated lift truck. For the purposes of this appeal, appellant admits that the truck would be unreasonably dangerous to one not apprised of the fact that it was made of conductive, uninsulated material. Appellant argues that the truck was not unreasonably dangerous to Howard, however, because he knew of the dangers. Appellant contends that Howard was aware of the dangerous condition of the truck because he was a skilled professional whose experience and training had taught him about the truck's condition and because his co-worker, Jimmy Jenkins, actually warned him of the dangers immediately before he was electrocuted. Appellees agree that if Howard knew of the dangers associated with using the truck, appellant would not be liable for its failure to warn. They contend that the only knowledge Howard had was of the general dangers associated with electrical wires but that he was unaware of the dangerous arcing potential of electricity as well as the fact that the truck was uninsulated and could not protect him from electrocution.
 
 
 9
 The resolution of this issue turns on how much knowledge Howard had of the dangers associated with using the truck. This was a factual matter on which judgment n. o. v. should have been denied if there was "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions...." Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969). A review of the evidence adduced at trial is necessary to determine whether the motion for judgment n. o. v. was properly denied.
 
 
 10
 The evidence indicated that Howard had been working with the aerial lift truck for at least six months. He had been trained by Jenkins and Hollis Beard, a foreman, for two or three hours before he ever operated the truck. Although there was a classroom course to instruct repairmen on the use of the truck, Howard had not taken the course. Those who took the course and demonstrated the requisite level of skill were given certification cards. Howard did not have one; however, his foreman testified that he considered Howard as skilled as those who held certificates. Although this does not prove that Howard was a novice, from this evidence a jury could reasonably conclude that Howard was less than an expert and did not have the knowledge that certified lift truck operators had. Thus it was reasonable for the jury to believe that Howard's professional experience did not provide him with knowledge of the dangerous condition of the truck.
 
 
 11
 Even if we assume that Howard was a skilled operator, the jury still would have been justified in finding that he was unaware of the electrocution hazard. Both Jenkins and Beard, who were certified operators with many years experience, testified that they did not know whether the bucket was insulated. They were aware of the general dangers associated with live wires, but neither testified that certified operators knew of the arcing potential of electricity or of the dangers involved in using an uninsulated bucket to move cables. In fact, Jenkins testified that some operators thought the rubber tires would save someone in the bucket, presumably by acting as insulation from the ground to break the circuit. Thus, it would not have been unreasonable for a jury to conclude that even the most skilled lift truck operators were unaware of all aspects of the dangers involved in using the truck in proximity to live electrical wires.
 
 
 12
 Appellant also argues that Jenkins warned Howard of the dangers immediately before the electrocution and thus Howard was made aware of all dangers. As Howard began his ascent in the bucket, Jenkins called out, "K. R., there's power," and Howard responded, "I see it, Jimmy." Appellees contend that this warning merely reminded Howard that there were wires overhead; it did not apprise him of the danger of arcing electricity or the fact that he was in an uninsulated truck. We agree with appellees. The general warning about "power" could not substitute for a warning of specific dangers.
 
 
 13
 In Pearson v. Hevi-Duty Electric, 618 S.W.2d 784 (Tex.Civ.App.-Houston 1981, writ ref'd n. r. e.), the court set aside a jury verdict finding for the defendants in a similar situation. Pearson was a skilled electrician quite familiar with the dangers of high voltage wires. He was electrocuted while working on a 7200 volt transformer when his hand came into contact with a "hot" fused switch. The switch bore the warning "High Voltage Do Not Touch" but said nothing of whether the switch was "hot" in the open or the close position. The court held that the warning given was merely a general one reminding Pearson of what every electrician knew. The issue, the court said,
 
 
 14
 was not whether there was an adequate warning of the general dangerous consequences of the presence of high voltage electrical power in the NX fused switch and its surroundings within the transformer, but whether there was adequate warning to put Connie Pearson on notice that the NX fuse or switch may be live in the open position and hence dangerous in such position. Stated another way: Was the general warning adequate where the undisputed evidence revealed that a specific warning would have pinpointed the danger of the fuse being live in the open position?
 
 
 15
 Id. at 788. See also Mansfield v. Union-76 Division of Union Oil Co. of California, 532 F.2d 446 (5th Cir. 1976).
 
 
 16
 In this case, Howard was well aware of the general dangers associated with electricity. Jenkins' reminder that there was "power" was, at best, a general warning and could not take the place of a warning of the specific dangers associated with using the uninsulated truck in the vicinity of live wires. The court was correct in denying appellant's motions for directed verdict and judgment n. o. v. on the warning issue.
 
 JURY CHARGE
 
 17
 Appellant contends that the court erred when it charged the jury that they could consider the value of a warning as a reminder to Howard in evaluating appellant's failure to warn. By including this charge, the court made it possible for the jury to find appellant liable for failing to refresh Howard's memory and in doing so expanded the legal duty imposed upon appellant. The purpose of a warning, appellant argues, is to impart initial knowledge of a dangerous condition. Once the user becomes aware of the dangers, the duty to warn is discharged. If the warning to Howard would have served only as a reminder, then he must have already known about the dangers because, by definition, a reminder refreshes one's memory as to facts already known. If Howard knew about the dangers associated with the truck, then appellant did not have a duty to warn him. Thus if the warning would have served only as a reminder, appellant argues, there was no duty to issue it. Appellant contends that by allowing the jury to hold it liable only for a failure to remind, the court saddled it with a duty not imposed upon it by Texas law. Appellant contends that this error was compounded by the timing of the instruction: during deliberation, the jury requested further instruction on the warning issue and it was then that the court charged them concerning the value of the warning as a reminder. This must have stood out in their minds, appellant argues, and rendered the error not harmless.
 
 
 18
 In assessing alleged errors in jury charges, we look at the charge as a whole to determine whether the jury was misled or whether they understood the issues and their duty to resolve them. The charge need not be faultless. Smith v. Borg-Warner Corp., 626 F.2d 384, 386 (5th Cir. 1980). We have reviewed the charge in its entirety and conclude that as a whole it stated the issues and controlling law clearly and correctly.
 
 
 19
 Whether the duty to warn includes the duty to remind is irrelevant here because the court did not charge the jury that they could find appellant liable for failing to remind Howard of dangers already known to him. All the court did was refer to evidence adduced by appellees. The court merely said, "there was evidence in there in regard to the value of a warning as to prod a person's memory." To read this comment as an instruction authorizing the jury to find appellant liable for a failure to remind would require an unnecessarily strained interpretation of the charge.
 
 
 20
 Further, the charge as a whole informed the jury that if they believed Howard knew of the dangers, they would have to find for appellant. In the original charge the court instructed the jury that a warning would not be required if it would have been ineffective, or if Howard had actual knowledge of the dangers, or if his experience on the job made him aware of the dangers. After the court recharged the jury with the allegedly erroneous instruction, it reiterated these same qualifications on the necessity of a warning. The court made it perfectly clear that appellant could not be liable if Howard was aware of the dangers. The slight reference to the evidence concerning a reminder did not undermine the adequacy of the charge as a whole.
 
 PROXIMATE CAUSE
 
 21
 Next appellant argues that the court erred in refusing to direct a verdict or grant judgment n. o. v. on the issue of proximate cause because the evidence established that the absence of a warning was not a cause of the electrocution as a matter of law. Appellant recognizes that generally we must presume that had a warning been given, it would have been heeded, Technical Chemical Co. v. Jacobs, 480 S.W.2d 602, 606 (Tex.1972), and that the absence of a warning can be considered a cause of the accident. In this case, however, appellant argues that the evidence proved that Howard would not have heeded a warning as to the dangers associated with operating the uninsulated truck. The "proof" appellant relies upon is its contention that Howard disregarded Jenkins' warning about "power" overhead and thus, appellant argues, we must conclude as a matter of law that Howard likewise would have disregarded the more specific warning his family claims should have been given by appellant.
 
 
 22
 First, Jenkins' caution to Howard concerned only the fact that there were electrical wires overhead; he did not warn Howard that the truck was uninsulated and that being near the wires would be dangerous. Second, there is no evidence whatsoever that Howard ignored Jenkins' warning. In fact, witnesses testified that Howard stayed clear of the wires and was electrocuted either because the electricity arced over to him or because it passed from the wires through the bucket and into his body. Finally, even if we accept appellant's contention that Jenkins' warning was ignored, we could not presume as a matter of law that a specific warning concerning the danger of being near live wires in an uninsulated bucket would have been disregarded. We cannot find any evidence to point to the conclusion urged by appellant. The court was correct in denying appellant's motions for directed verdict and judgment n. o. v. on this issue.
 
 VOLUNTARY ASSUMPTION OF THE RISK
 
 23
 Appellant also complains that the court refused to direct a verdict or enter judgment n. o. v. on its affirmative defense of voluntary assumption of the risk. In order to prove this defense, appellant had to show that Howard (1) had subjective knowledge of the facts of the dangerous condition; (2) had subjective knowledge that the condition was dangerous; (3) subjectively appreciated the nature and extent of the danger; and (4) voluntarily exposed himself to the danger. Pearson, 618 S.W.2d at 789; Caterpillar Tractor Co. v. Gonzales, 599 S.W.2d 633, 638 (Tex.Civ.App.-El Paso 1980, writ ref'd n. r. e.).
 
 
 24
 This defense is of little practical value to appellant in this warning case. To establish the defense it must prove that Howard was fully aware of the dangerous condition of the truck. If appellant could prove that fact, then it would have successfully defended against the failure-to-warn claim because, as appellees admit, there is no duty to warn one who is already aware of a danger.
 
 
 25
 We have already held that the jury was justified in believing that Howard did not have full knowledge of the dangerous condition of the truck in the situation presented by these facts. The meager evidence suggesting that Howard might have been aware cannot establish the defense of voluntary assumption of the risk. "(T)he mere fact that an individual might have, or should have, been aware of the particular risk is insufficient to establish the defense." Green v. Edmands Co., 639 F.2d 286, 290 (5th Cir. 1981). Having failed to prove that Howard was even aware of the dangers, appellant could not prove that he voluntarily encountered them.
 
 CREDIT
 
 26
 Finally, appellant argues that it should have been permitted to take a credit in the amount of the settlement paid to appellees by Magnolia Transportation Company and Dickey Electric Company. Under Texas law,[1] a non-settling defendant may elect to subtract the amount paid by settling defendants from a judgment entered against it provided both the settlement and the judgment represent common damages. Payne v. Gould, Inc., 503 F.Supp. 1060 (E.D.Tex.1980), aff'd, 652 F.2d 998 (5th Cir. 1981); Sweep v. Lear Jet Corp., 412 F.2d 457 (5th Cir. 1969); Providence Hospital v. Truly, 611 S.W.2d 127 (Tex.Civ.App.-Waco 1980, writ dism'd w. o. j.); T. L. James & Co. v. Statham, 558 S.W.2d 865 (Tex.1977); Bradshaw v. Baylor University, 126 Tex. 99, 84 S.W.2d 703 (1936). The purpose of allowing the credit is to ensure that the injured plaintiff receives only one satisfaction for the full amount of damages. T. L. James & Co., 588 S.W.2d at 868. Appellees recognize the validity of the credit rule but contend that a credit was properly denied in this case because the appellant did not show that the settlement and judgment represented common damages and, in the alternative, because appellant waived its right to a credit. We hold the credit rule applicable in this case and modify the judgment against appellant accordingly.
 
 
 27
 In their original complaint, appellees sought $5,000,000.00 in exemplary damages from Dickey Electric Company. The settlement agreement between the Howards and Dickey and Magnolia, however, did not mention whether the $595,000.00 included exemplary damages as well as actual damages; the judgment against appellant encompassed only actual damages. Therefore, if the settlement figure included an award for exemplary damages, that portion of it could not serve as a credit for appellant because of the requirement that the settlement and the judgment represent common damages. Providence Hospital v. Truly, 611 S.W.2d at 135; Hill v. Budget Finance & Thrift Co., 383 S.W.2d 79, 81 (Tex.Civ.App.-Dallas 1964, no writ). The burden of proving common damages rests with the appellant because it was the party that sought the credit. Hill, 383 S.W.2d at 82. We find that appellant met its burden and was entitled to a credit.
 
 
 28
 The settlement agreement itself does not provide for exemplary damages.[2] Although only Dickey had been sued for exemplary damages, the $595,000.00 was to be paid half by Dickey and half by Magnolia. Because only actual damages were sought from both companies, it is reasonable to conclude that the settlement was for actual damages only. Presumably, if the settlement included exemplary damages, Dickey would have been saddled with a larger share than Magnolia. Further, when questioned by the district court in the hearing on the Motion for Judgment, counsel for appellees was forced to concede that there was no indication that any part of the settlement was intended to represent exemplary damages. The remarkable similarity between the settlement figure and the amount of damages assessed by the jury, although not determinative, is certainly supportive of our conclusion that the settlement represented only actual damages and therefore can serve as the basis of the credit to appellant.
 
 
 29
 Appellees' contention that appellant waived its right to a credit is unpersuasive. Throughout the proceedings, appellant maintained that a credit was due. That it requested an inappropriate calculation[3] of the amount does not constitute waiver. Both the court and the appellees were aware at all times of appellant's request for the credit. In fact, the appellees suggested six alternative ways to calculate the credit amount.[4] Appellant preserved its right to a credit and the court below erred in refusing to grant one.
 
 
 30
 We must now calculate the proper amount of credit due appellant. We find that appellant is entitled to a credit in the amount of $513,222.53. We arrive at this figure by subtracting the amount awarded to each appellee in the settlement from the amount awarded by the judgment. The settlement was apportioned as follows:
 
 
 31
 Mrs. Howard and the estate of
 Kenneth R. Howard $409,984.52
Texas Compensation Insurance
 Co. 13,238.01
Kenneth R. Howard, Jr. 42,944.37
Vicki Howard 60,122.11
Timothy Howard 68,710.99
 -----------
 $595,000.00
 The judgment was awarded as follows:
Mrs. Howard $500,000.00
Estate of Kenneth R. Howard 20,000.00
Kenneth R. Howard, Jr. 30,000.00
Vicki Howard 30,000.00
Timothy Howard 30,000.00
 -----------
 $610,000.00
 
 
 32
 Appellant is liable to Mrs. Howard and the deceased's estate in the amount of $96,777.47 ($520,000.00 minus $423,222.53[5]) but is relieved of liability to Kenneth Howard, Jr. ($30,000.00 minus $42,944.37), Vicki Howard ($30,000.00 minus $60,122.11), and Timothy Howard ($30,000 minus $68,710.99) because the settlement award to the Howard children exceeded the judgment awarded to each. The judgment below is modified accordingly.
 
 
 33
 AFFIRMED in part; MODIFIED in part.
 
 
 
 [1]
 Appellee argues that we should exercise our equitable jurisdiction and apply a rule of reason favoring settlements rather than the credit rule applied by Texas courts. It is clear, however, that Texas law controls this issue. Payne v. Gould, Inc., 503 F.Supp. 1060, 1061 (E.D.Tex.1980), aff'd, 652 F.2d 998 (5th Cir. 1981); Sweep v. Lear Jet Corp., 412 F.2d 457, 458 & n.1 (5th Cir. 1969)
 
 
 [2]
 Cf. Hill, supra, in which the court refused to allow a credit because the settlement agreement was read to include exemplary and actual damages without an apportionment
 
 
 [3]
 Appellant requested that the court credit it with $595,000.00, the full amount of the settlement. This calculation was incorrect, however. Both the settlement and the judgment were apportioned between the various appellees. To compute the credit due appellant, the court must calculate the difference between the judgment and settlement with respect to each appellee individually. Lynn v. Southwestern Electric Power Co., 453 F.Supp. 599, 603 (E.D.Tex.1978)
 
 
 [4]
 The method by which we calculated the credit due, see our discussion infra, was very similar to the one of the methods suggested by appellees
 
 
 [5]
 This figure includes the portion of the settlement received by Texas Compensation Insurance Company, a subrogee of the estate, $13,238.01. With the settlement awarded Mrs. Howard $409,984.52 added, the total is $423,222.53