Lee RATNER and John Zuro, Individual-
ly and d/b/a The Grant Company,
Plaintiffs-Appellees,

v.

SIOUX NATURAL GAS CORPORATION
and Sioux Pipeline Corporation,
Defendants-Appellants.

No. 82–2309.

United States Court of Appeals,
Fifth Circuit.

Nov. 14, 1983.

Hayden Burns, Eliot Shavin, Houston, Tex., for Sioux Gas & Pipeline & Powers.

William E. Wright, Peter B. Camp, Houston, Tex., for plaintiffs-appellees.

Before WISDOM, TATE and GARWOOD, Circuit Judges.

WISDOM, Circuit Judge.

This appeal is from a judgment for $18 million in favor of Grant Company against the defendants, Sioux Natural Gas Corporation, Sioux Pipeline Corporation, Elliott. H. Powers, and J.F. Freel. Shortly before this Court heard oral argument on the case, the individual appellants—Powers and Freel—reached a settlement with Grant, which the district court approved after a hearing. We remand for a determination whether the settlement has mooted the entire appeal.

## I.

In November · 1974, Lee Ratner, John Zuro, and their partnership, the Grant Company,[1] entered into a net-profits-interest agreement with Elliott Powers, J.F. Freel, and Sioux Natural Gas. In accordance with the agreement, Grant transferred to Sioux certain oil and gas leases and associated property. Powers and Freel promised to · manage and develop the properties, to drop a pending lawsuit against the plaintiffs, to assume $2.4 million of the plaintiffs' indebtedness to others, and to pay Grant 25 percent of all profit realized from the properties after certain debts and expenses had been satisfied.

Powers and Freel created and incorporated Sioux Natural Gas to take title to the Grant properties.[2] Powers and Freel were the directors, officers, and sole shareholders of Sioux;[3] Sioux was simply the "nominee" of Powers and Freel.[4] Sioux Pipeline, a spin-off of Sioux organized after the closing of the agreement, was subject to the same degree of control that Powers and Freel exercised over Sioux.[5]

The plaintiffs filed a complaint with the United States District Court for the Southern District of Texas on November 25, 1977. Alleging that the defendants had fraudulently induced the plaintiffs to enter into the 1974 agreement, the complaint charged the defendants with violating federal and state securities law. After a nine-day trial, a jury found the defendants guilty of common law fraud and of fraud under the Texas Securities Act[6] and section 12(2) of the Securities · Act of 1933.[7] The jury

1. The Grant Company corporation (the judgment creditor) is the successor-in-interest to the Grant Company partnership. See Plaintiffs' Amended Complaint ¶ 2.1 (filed Dec. 29, 1980); Testimony of John Zuro, 12 Record 210. In his Order of April 2, 1981, the district judge granted the plaintiffs' motion to substitute the Grant Company corporation as the real party in interest and to retain Ratner and Zuro as "nominal plaintiffs".

2. Testimony of J.F. Freel, 10 Record 60–61.

3. Plaintiffs' Original Complaint ¶¶ 2.6, 2.7 (filed Nov. 25, 1977); Defendants' Original Answer and Counterclaim ¶ 6 (filed Dec. 28, 1977); Testimony of Elliott Powers, 10 Record 7–8.

4. E.g., Letter from the Grant Company to Elliott H. Powers and J.F. Freel, Plaintiffs Exhibit No. 6, at 1, 4 (Nov. 25, 1974).

5. See sources cited supra note 3. Sometime around 1980, the Powers-Freel corporate family underwent a reorganization in which Sioux and Sioux Pipeline became wholly owned subsidiaries of Rapada Corporation. At least through the time of trial, Powers and Freel were co-chairmen of Rapada. Until the settlement, Powers, Freel, and Freel's son were the sole owners of Rapada. Testimony of Elliott Powers, 8 Record 57, 59, 72–73.

6. Tex.Stat.Ann. arts. 581–1 to –39 (Vernon 1964 & Supp.1982).

7. 15 U.S.C. § 77l(2) (1982). The plaintiffs charged that the defendants also violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5 (1983). The

awarded the plaintiffs $11.9 million in actual damages and $1.1 million in punitive damages.[8] The district judge entered judgment upon the jury's verdict, holding the four defendants jointly and severally liable to Grant in the amount of $18,385,307.80.[9] The defendants appealed.

On May 6, 1983, less than two weeks before this Court heard argument on the appeal, Powers and Freel settled with Grant. The settlement provides that Grant will receive all of the common stock of Rapada Corporation—the parent of Sioux, Sioux Pipeline, and several other companies—along with other assets of the individual defendants. In return, Powers and Freel are discharged from liability on the judgment. The settlement agreement states that the "judgment shall remain in full force and effect against . . . Sioux Natural Gas Corporation and Sioux Pipeline Corporation".[10]

## II.

The settlement between Grant and the individual defendants requires this Court to address the effect of settlements on the liability of nonsettling joint tortfeasors. We hold that, in the circumstances that this case presents, the value of the property received by Grant through the settlement should be credited against the entire judgment before the liability of Sioux and Sioux Pipeline is assessed. If the value of the property received exceeds the total judgment,[11] the settlement has extinguished the liability of the nonsettling defendants and has rendered this case moot. Accordingly, we remand for a determination of the value of the property received.

Texas tort law recognizes a "one satisfaction" rule: "[A]n injured party is entitled to but one satisfaction for a single injury, so that an amount received in settlement from one alleged tortfeasor must be applied as a credit reducing the amount to be recovered against other defendants." *Gill v. United States*, 5 Cir.1970, 429 F.2d 1072, 1079.[12] This rule has also been applied to

jury found for the defendants on the § 10(b) and rule 10b–5 allegation.

8. The jury awarded punitive damages in connection with the claim of common law fraud only.

9. The final judgment included $5,385,307.80 in prejudgment interest.

10. Stipulation and Order Respecting Application of Plaintiff for Supplementary Aid in Collection of Judgment and Show Cause Hearing for Turnover Orders Compelling Defendants To Deliver Non-exempt Properties and Records Thereto, and Judgment Creditor[']s Petition for Injunctive Relief To Maintain Status Quo Pending Execution, at 6 (filed June 1, 1983); *see also* Transcript of Settlement Hearing (May 6, 1983).

That Grant is now effectively the owner of the nonsettling defendants does not itself render this case moot. Rapada, Sioux, and Sioux Pipeline are in reorganization proceedings under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174 (1982), and the assignment of the Rapada common stock to Grant is subject to prior bank liens. If Grant is entitled to further recovery from Sioux and Sioux Pipeline, a resolution of the merits of this appeal

will determine Grant's priority in the reorganization proceedings.

11. Such a situation is likely, even though Rapada Corporation is currently operating under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174 (1982). According to the defendants, a conservative estimate places the value of Rapada and its subsidiaries at $82 million; the defendants assert further that possible and prospective revenue from the development of oil and gas wells owned by the Rapada corporate family totals nearly $300 million. Defendants' Application for Stay Pending Appeal, at 4 (filed July 23, 1982).

12. *Accord Dobson v. Camden*, 5 Cir.1983, 705 F.2d 759, 763, *reheard en banc*, Sept. 13, 1983 (No. 82–2066); *Howard v. General Cable Corp.*, 5 Cir.1982, 674 F.2d 351, 358; *Sweep v. Lear Jet Corp.*, 5 Cir.1969, 412 F.2d 457, 460 n. 14, 462 n. 18 (citing cases); *T.L. James & Co. v. Statham*, Tex.1977, 558 S.W.2d 865, 868; *McMillen v. Klingensmith*, Tex.1971, 467 S.W.2d 193, 196–97; *Bradshaw v. Baylor Univ.*, 1935, 126 Tex. 99, 84 S.W.2d 703, 705; *General Motors Corp. v. Grizzle*, Tex.App.1982, 642 S.W.2d 837, 842, *writ dismissed for want of jurisdiction;* Hodges, *Contribution and Indemnity Among Tortfeasors*, 26 Tex.L.Rev. 150, 170–71 & n. 100 (1947); *see also* Restatement (Second) of Torts § 885(3) (1977).

cases arising under the federal securities laws,[13] and therefore governs in this appeal.

The "one satisfaction" rule does not, however, completely dispose of the question addressed here, for several cases have held the rule inapplicable to punitive damages. *See Howard v. General Cable Corp.,* 5 Cir.1982, 674 F.2d 351, 358; *Hill v. Budget Finance & Thrift Co.,* Tex.Civ.App.1964, 383 S.W.2d 79, 81–82, *no writ; see also Dobson v. Camden,* 5 Cir.1983, 705 F.2d 759, 772 (Higginbotham, J., dissenting) (citing *Hill*), *reheard en banc,* Sept. 13, 1983 (No. 82–2066). These cases are not directly relevant. In both *Howard* and *Hill,* the decision not to apply the rule to punitive damages turned on the fact that such damages were not common to all of the defendants. *Hill* concerned a situation in which the plaintiff sought compensatory damages against four groups of defendants for their joint actions, as well as punitive damages against each defendant for its separate actions. Three of the defendant groups settled with the plaintiff; the remaining defendant went to trial and was adjudged liable for compensatory—but not punitive—damages. The appellate court held that the amount of the settlement that represented punitive damages could not be used to offset the compensatory damages awarded against the nonsettling defendant, because "credit to be claimed by a joint tort-feasor is confined to those damages for which all tort-feasors are equally liable". 383 S.W.2d at 81. The factual context and holding of *Howard* are essentially the same as those in *Hill. See Howard,* 674 F.2d at 358.

In the instant case the district court held all four defendants jointly and severally liable for both actual and punitive damages. The court did not apportion liability among the defendants, and liability for all of the defendants was premised upon the same actions—the actions and alleged misrepresentations of Powers and Freel. *Hill* and *Howard* are therefore not directly relevant here.

■ Nevertheless, the rationale of the "one satisfaction" rule is usually inapposite to punitive damages. The purpose of the rule is to ensure that a plaintiff receives no more than full compensation for his loss. *See, e.g., Dobson v. Camden,* 5 Cir.1983, 705 F.2d 759, 766, *reheard en banc,* Sept. 13, 1983 (No. 82–2066); *Snowden v. D.C. Transit Systems,* D.C.Cir.1971, 454 F.2d 1047, 1048; *Harrington v. Texaco, Inc.,* 5 Cir. 1964, 339 F.2d 814, 820, *cert. denied,* 1965, 381 U.S. 915, 85 S.Ct. 1538, 14 L.Ed.2d 435. A plaintiff awarded punitive damages has been given the right to receive more than "one satisfaction". The award of punitive damages is unconcerned with compensation; it is intended to punish the wrongdoer and to deter the commission of similar offenses in the future. *E.g., City of Newport v. Fact Concerts, Inc.,* 1981, 453 U.S. 247, 266–67, 101 S.Ct. 2748, 2759–60, 69 L.Ed.2d 616; *Maxey v. Freightliner Corp.,* 5 Cir.1982, 665 F.2d 1367, 1378; 17 Tex.Jur.2d *Damages* § 174, at 240–41 (1960). To further the objectives of punishment and deterrence, it is more important that a defendant pay for his wrongdoing than that the plaintiff receive the payment. *Dobson v. Camden,* 705 F.2d at 769–70.

■ But punitive damages are a harsh remedy, not favored by the law,[14] and

---

**13.** *See MacKethan v. Burrus, Cootes & Burrus,* 4 Cir.1976, 545 F.2d 1388, 1390 (Wyzanski, J.), *cert. denied,* 1977, 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85; *Gould v. American-Hawaiian S.S. Co.,* 3 Cir.1976, 535 F.2d 761, 784 & n. 30; *McLean v. Alexander,* D.Del.1978, 449 F.Supp. 1251, 1267, 1271, *rev'd on other grounds,* 3 Cir.1979, 599 F.2d 1190; *see also Miller v. Apartments & Homes of N.J., Inc.,* 3 Cir.1981, 646 F.2d 101, 109–10 (adopting rule in action under 42 U.S.C. § 1983); *Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.,* 2 Cir.1972, 453 F.2d 552, 554 (adopting rule in copyright infringement action). Another panel of this Court recently rejected applying the

Texas rule in a § 1983 action. *Dobson v. Camden,* 5 Cir.1983, 705 F.2d 759, *reheard en banc,* Sept. 13, 1983 (No. 82–2066). The *Dobson* Court based its decision on the strong policy of deterrence underlying § 1983. *Id.* at 764–66. Because we find the policy of deterrence inapposite to the precise issue addressed here, *Dobson* is not controlling.

**14.** *E.g., Knippen v. Ford Motor Co.,* D.C.Cir. 1976, 546 F.2d 993, 1002; *Lee v. Southern Home Sites Corp.,* 5 Cir.1970, 429 F.2d 290, 294; *Garman v. New York Life Ins. Co.,* N.D.Ill. 1980, 501 F.Supp. 51, 53.

should be allowed only when they can properly promote the dual purposes of punishment and deterrence. *See Anglo-American General Agents v. Jackson National Life Insurance Co.,* N.D.Cal.1979, 83 F.R.D. 41, 45–46, holding that the amount of an award of punitive damages should not exceed the level necessary properly to punish and deter. In the instant case, the nonsettling defendants are two corporations wholly owned and completely controlled at all relevant times by the two settling defendants. The settling defendants created the nonsettling defendants for the sole purpose of receiving the property allegedly taken by fraud. The liability of the nonsettling defendants for actual and punitive damages resulted solely from the actions and alleged misrepresentations of the settling defendants. In these circumstances, if the settlement satisfies both the compensatory and the punitive damages awarded to Grant, the goals of punishment and deterrence have been served adequately. Allowing Grant to recover punitive damages from Sioux and Sioux Pipeline—regardless of whether the settlement has satisfied this component of the judgment—would be overkill.

Moreover, because of the present financial situation of the nonsettling defendants and because the settlement has in effect vested Grant with ownership of the nonsettling defendants, further recovery by Grant against Sioux and Sioux Pipeline can have no deterrent or punitive effect on those defendants. Sioux and Sioux Pipeline are in bankruptcy. If their corporate assets are insufficient to satisfy all claims against them, upholding the validity of Grant's claim for punitive damages would hurt the corporate defendants' unsecured creditors, not the corporate defendants. If the corporate assets are sufficient to satisfy all claims, allowing Grant to recover would simply effect a transfer of assets between corporations owned by Ratner and Zuro. In either situation, no public purpose is furthered.

### III.

The holding of this case is limited to the circumstances with which we are confronted. We do not hold that punitive damages should not be awarded against corporate defendants when liability is wholly derivative from the actions of controlling individual defendants. We recognize that the "one satisfaction" rule usually should not apply to punitive damages. Nonetheless, we find that the purposes underlying the award of punitive damages in this case will have been adequately served if the settlement is sufficient to cover the entire judgment. Accordingly, we remand for a determination of the value of the property received by Grant in its settlement with Powers and Freel.[15]

We are mindful of the exigency created by the financial straits of the corporate defendants,[16] and thus of the inconvenience of a remand. Commercial exigency, however, does not justify breach of the "case or controversy" requirement that delimits the jurisdiction of federal courts. We cannot decide this appeal if it has been mooted by settlement.

Because of the necessity for determining whether the case is moot, we do not reach the merits.

The case is REMANDED for proceedings consistent with this opinion.

---

**15.** On remand, the burden of proof rests with Sioux and Sioux Pipeline. *See Howard v. General Cable Corp.,* 5 Cir.1982, 674 F.2d 351, 358; *Hill v. Budget Fin. & Thrift Co.,* Tex.Civ.App. 1964, 383 S.W.2d 79, 82–83, *no writ.*

**16.** The United States Bankruptcy Court for the Southern District of Texas has ordered that the automatic stay under 11 U.S.C. § 362 (1982) be modified to allow this appeal to proceed. The basis of the bankruptcy court's decision is that "an expeditious resolution of this dispute is essential to the formulation of the Debtors' Plan of Reorganization". Agreed Order Modifying Stay Pertaining to Federal Court Appeal, *In re Sioux Natural Gas Corp.,* Nos. 82–03640–H1–5, 82–03642–H1–5 (Bankr.S.D.Tex. Jan. 13, 1983).